U.S. Court of Appeals No. 15-55143
U.S.D.C. Case No. 2:12-cv-06654-CAS(MANx)

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

LORRIE POUBLON, an individual, on behalf of herself, and on behalf of all persons similarly situated,

*Plaintiff - Appellee,*

vs.

C.H. ROBINSON COMPANY and C.H. ROBINSON WORLDWIDE, INC.,

*Defendants - Appellants.*

## APPELLANTS' OPENING BRIEF

Appeal from an Order of the United States District Court
For the Central District of California
Case No. 2:12-cv-06654-CAS(MANx)
The Honorable Christina A. Snyder, Judge Presiding

JACK S. SHOLKOFF, State Bar No. 145097
jack.sholkoff@ogletreedeakins.com
CHRISTOPHER W. DECKER, State Bar No. 229426
christopher.decker@ogletreedeakins.com
KATHLEEN J. CHOI, State Bar No. 284428
kathleen.choi@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213.239.9800
Facsimile: 213.239.9045
Attorneys for Defendants - Appellants
C.H. ROBINSON COMPANY and C.H. ROBINSON WORLDWIDE, INC.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellant C.H. Robinson Company states that it is a wholly-owned subsidiary of Appellant C.H. Robinson Worldwide, Inc., a Delaware corporation, which is listed on the NASDAQ stock exchange. Appellants otherwise have no parent(s) and no wholly-owned subsidiary(ies) which have issued shares to the public.

DATED: August 17, 2015   OGLETREE, DEAKINS, NASH, SMOAK
        & STEWART, P.C.


       By: */s/ Christopher W. Decker*
        Jack S. Sholkoff
        Christopher W. Decker
        Kathleen J. Choi
       Attorneys for Defendants - Appellants
       C.H. ROBINSON COMPANY and
       C.H. ROBINSON WORLDWIDE, INC.

i

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT .........................................................i

I. INTRODUCTION ............................................................1

II. STATEMENT OF JURISDICTION ...............................................1

III. STATEMENT OF ISSUES PRESENTED FOR REVIEW...........................2

IV. STATEMENT OF THE CASE ......................................................3

    A. PLAINTIFF AGREES TO RESOLVE ANY CLAIMS AGAINST CHRW EXCLUSIVELY THROUGH ARBITRATION ON AN INDIVIDUAL BASIS. ................................3

    B. THE SOUTHERN DISTRICT OF CALIFORNIA ENFORCES THE DRP IN THE MATTER OF *GRABOWSKI V. C.H. ROBINSON COMPANY, ET AL.* ........................................6

    C. VIOLATING THE DRP, PLAINTIFF INSTITUTES THIS ACTION IN STATE COURT..............................................7

    D. CHRW MOVES TO STAY THIS ACTION, COMPEL ARBITRATION, AND DISMISS PLAINTIFF'S CLASS AND REPRESENTATIVE ALLEGATIONS................................7

    E. THE DISTRICT COURT ERRONEOUSLY DENIES THE MOTION. ..................................................8

V. STANDARD OF REVIEW ........................................................9

VI. SUMMARY OF ARGUMENT ....................................................9

VII. LAW AND ARGUMENT............................................................12

    A. THE DRP IS ENFORCEABLE PURSUANT TO CALIFORNIA LAW...........................................................12

    B. THE DISTRICT COURT ERRED IN HOLDING THAT THE DRP EVINCES MORE THAN A MINIMAL DEGREE OF PROCEDURAL UNCONSCIONABILITY.......................................13

C.   THE DISTRICT COURT ERRED IN HOLDING THAT THE
     DRP'S PROVISIONS REGARDING VENUE,
     CONFIDENTIALITY, ATTORNEYS' FEES AND THE
     INCORPORATION OF EXTERNAL RULES ARE
     SUBSTANTIVELY UNCONSCIONABLE. ....................................23

     1.   THE DRP'S VENUE PROVISION IS NOT
          UNCONSCIONABLE ...........................................................23

     2.   THE DRP'S CONFIDENTIALITY PROVISION IS
          NOT UNCONSCIONABLE......................................................30

     3.   THE DRP'S ATTORNEYS' FEES PROVISION IS
          NOT UNCONSCIONABLE......................................................36

     4.   THE DRP'S PROVISION INCORPORATING
          EXTERNAL RULES DOES NOT AMOUNT TO AN
          UNCONSCIONABLE UNILATERAL
          MODIFICATION PROVISION. ...............................................42

D.   THE DISTRICT COURT ERRED IN REFUSING TO SEVER
     AND/OR REFORM THE CARVE-OUT FOR CLAIMS FOR
     EQUITABLE OR INJUNCTIVE RELIEF. .......................................47

VIII.  CONCLUSION.................................................................................54

CERTIFICATE OF COMPLIANCE........................................................55

STATEMENT OF RELATED CASES ....................................................56

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Abeyrama v. J.P. Morgan Chase Bank,*
    No. CV12–00445 DMG, 2012 WL 2393063
    (C.D. Cal. June 22, 2012) ......................................................27

*Arreguin v. Global Equity Lending, Inc.,*
    No. C 07-06026 MHP, 2008 WL 4104340
    (N.D. Cal. Sept. 2, 2008) .......................................................53

*AT&T Mobility LLC v. Concepcion,*
    ___ U.S. ____, 131 S. Ct. 1740 (2011).........................21, 35

*Bushley v. Credit Suisse First Boston,*
    360 F.3d 1149 (9th Cir. 2004) ..................................................9

*Circuit City Stores, Inc. v. Adams,*
    279 F.3d 889 (2002)................................................................12

*Davis v. O'Melveny & Myers,*
    485 F.3d 1066 (9th Cir. 2007) ...............................30, 32, 33

*Ferguson v. Countrywide Credit Industries, Inc.,*
    298 F.3d 778 (9th Cir. 2002) .................................1, 9, 13

*First Options of Chicago, Inc. v. Kaplan,*
    514 U.S. 938 (1995)................................................................12

*Grabowski v. C.H. Robinson Company,*
    817 F. Supp. 2d 1159 (S.D. Cal. 2011)......................6, 7, 52

*Hayes v. Cnty. of San Diego,*
    658 F.3d 867 (9th Cir. 2011) ................................................20

*Howard v. Octagon, Inc.,*
    No. C 13-1111 PJH, 2013 WL 5122191
    (N.D. Cal. Sept. 13, 2013) ....................................................18

*Ingle v. Circuit City Stores, Inc.*,
   328 F.3d 1165 (9th Cir. 2003) ...................................................12, 46

*Jones-Mixon v. Bloomingdale's, Inc.*,
   No. 14–cv–01103–JCS, 2014 WL 2736020
   (N.D. Cal. June 11, 2014) ...............................................................27

*Kilgore v. KeyBank Nt. Ass'n*,
   718 F.3d 1052 (9th Cir. 2013) ...................................................32, 35

*King v. Hausfeld*,
   No. C–13–0237 EMC, 2013 WL 1435288
   (N. D. Cal. April 9, 2013) ...............................................................34

*Luafau v. Affiliated Computer Services, Inc.*,
   No. C 06–0347 CW, 2006 WL 1320472
   (N.D. Cal. May 15, 2006) ................................................................34

*Lucas v. Gund, Inc.*,
   450 F. Supp. 2d 1125 (C.D. Cal. 2006) ...........................................18

*Martin v. Ricoh Americas Corp.*,
   No. C–08–4853 EMC, 2009 WL 1578716
   (N.D. Cal. June 4, 2009) .................................................................52

*Miguel v. JP Morgan Chase Bank, N.A.*,
   No. CV 12–3308 PSG, 2013 WL 452418
   (C.D. Cal. Feb. 5, 2013)..................................................................18

*Miller v. County of Santa Cruz*,
   39 F.3d 1030 (9th Cir.1994) ...........................................................35

*Morgan v. Xerox Corp.*,
   No. 2:13–cv–00409–TLN–AC, 2013 WL 2151656
   (E.D. Cal. May 16, 2013)................................................................19

*Nagrampa v. MailCoups, Inc.*,
   469 F.3d 1257 (9th Cir. 2006) ........................................................13

*New Hampshire v. Maine*,
   532 U.S. 742 (2001)..................................................................39, 40

*Oblix, Inc. v. Winiecki*,
374 F.3d 488 (2004)............................................................22

*Pokorny v. Quixtar, Inc.*,
601 F.3d 987 (9th Cir. 2010) ........................................30, 33

*Pope v. Sonatype, Inc.*,
No. 5:15–cv–00956–RMW, 2015 WL 2174033
(N.D. Cal. May 8, 2015) ...................................................52

*Ruhe v. Masimo Corp.*,
No. SACV 11–00734–CJC(JCGx), 2011 WL 4442790
(C.D. Cal. Sept. 26, 2011)..................................................38

*Siglain v. Trader Pub. Co.*,
No. C 08-2108 JL, 2008 WL 3286974
(N.D. Cal. August 6, 2008)................................................53

*Sullivan v. Lumber Liquidators, Inc.*,
No. C-10-1447 MMC, 2010 WL 2231781
(N.D. Cal. June 2, 2010) ...................................................18

*Swarbrick v. Umpqua Bank*,
No. 2:08-cv-00532-MCE-DAD, 2008 WL 3166016
(E.D. Cal. Aug. 5, 2008) ...................................................18

*Ting v. AT&T*,
319 F.3d 1126 (9th Cir. 2003) ...........................................31

*Ulbrich v. Overstock.Com, Inc.*,
887 F. Supp. 2d 924 (2012) ...............................................22

*Velazquez v. Sears, Roebuck & Co.*,
No. 13cv680–WQH–DHB, 2013 WL 4525581
(S.D. Cal. Aug. 26, 2013) .................................................34

**California Cases**

*24 Hour Fitness, Inc. v. Superior Court*,
66 Cal. App. 4th 1199 (1998) ...........................................45

*Ajamian v. CantorCO2e, L.P.*,
203 Cal. App. 4th 771 (2012) ...........................................14

*Ajaxo Inc. v. E\*Trade Group, Inc.*,
135 Cal. App. 4th 21 (2005) ...............................................................38

*Amtower v. Photon Dynamics, Inc.*,
158 Cal. App. 4th 1582 (2008) ..........................................................21

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000) .................................................24, 43, 44, 48

*Bigler v. Harker School*,
213 Cal. App. 4th 727 (2013) .............................................................17

*Blake v. Ecker*,
93 Cal. App. 4th 728 (2001),
*disapproved of on other grounds by Le Francois v. Goel*,
35 Cal. 4th 1094 (2005) ......................................................................25

*Bolter v. Superior Court*,
87 Cal. App. 4th 900 (2001) ...............................................................30

*Carmona v. Lincoln Millennium Car Wash, Inc.*,
226 Cal. App. 4th 74 (2014) .......................................................19, 20

*Casas v. CarMax Auto Superstores LLC*,
224 Cal. App. 4th 1233 (2014) ...............................................44, 45, 46

*Dotson v. Amgen, Inc.*,
181 Cal. App. 4th 975 (2010) .......................................14, 26, 48, 49

*Fitz v. NCR Corp.*,
118 Cal. App. 4th 702 (2004) .............................................................17

*Furda v. Superior Court*,
161 Cal. App. 3d 418 (1984) ...............................................................29

*Gillespie v. Western Pacific Housing Management, Inc.*,
No. D066354, 2014 WL 7195024
(Cal. Ct. Appeal, 4th Dist. Dec. 18, 2014).......................................53

*Harper v. Ultimo*,
113 Cal. App. 4th 1402 (2003) .....................................................17, 48

*Henderson v. Superior Court*,
No. B219024, 2010 WL 745161
(Cal. Ct. App. 2d Dist. Mar. 5, 2010) ...................................................34

*Htay Htay Chin v. Advanced Fresh Concepts Franchise Corp.*,
194 Cal. App. 4th 704 (2011) ...............................................................34

*Intershop Communications, Inc. v. Superior Court*,
104 Cal. App. 4th 191 (2002) ...............................................................29

*Jeffrey v. Automobile Club of Southern California*,
No. E056224, 2014 WL 2979775
(Cal. Ct. App. 4th Dist. July 3, 2014) ...................................................34

*Lane v. Francis Capital Management, LLC*,
224 Cal. App. 4th 676 (2014) ........................................16, 17, 18, 19

*Lawler v. 24 Hour Fitness USA, Inc.*,
No. B230413, 2011 WL 6062027
(Cal. Ct. App. 2d Dist. Dec. 7, 2011) ...................................................34

*Little v. Auto Stiegler, Inc.*,
29 Cal. 4th 1064 (2003) ......................................................44, 47, 48

*Mathis v. Screen Actors Guild Producer Pension Health Plan*,
No. B220046, 2011 WL 199002
(Cal. Ct. App. 2d Dist. Jan. 24, 2011) ..................................................34

*McManus v. CIBC World Markets Corp.*,
109 Cal. App. 4th 76 (2003) .................................................................49

*Mercuro v. Superior Court*,
96 Cal. App. 4th 167 (2002) .................................................................27

*Moran v. Superior Court*,
No. F061801, 2011 WL 5560178
(Cal. Ct. App. 5th Dist. Nov. 16, 2011) ................................................34

*Nelsen v. Legacy Partners Residential, Inc.*,
207 Cal. App. 4th 1115 (2012) ............................................................44

*Net2Phone, Inc. v. Superior Court*,
109 Cal. App. 4th 583 (2003) ...............................................................29

*Olnick v. BMG Entertainment*,
  138 Cal. App. 4th 1286 (2006) .....................................................28, 29

*Peleg v. Neiman Marcus Group, Inc.*,
  204 Cal. App. 4th 1425 (2012) .....................................................45, 46

*Peng v. First Republic Bank*,
  219 Cal. App. 4th 1462 (2013) .....................................................16, 18

*Pinedo v. Premium Tobacco Stores, Inc.*,
  85 Cal. App. 4th 774 (2000) ..............................................................30

*Roman v. Superior Court*,
  172 Cal. App. 4th 1462 (2009) .....................................................14, 51

*Sanchez v. CarMax Auto Superstores LLC*,
  224 Cal. App. 4th 398 (2014) ............................................................33

*Sanchez v. Valencia Holding Company LLC*,
  ____ Cal. 4th ____, No. S199119, 2015 WL 4605381
  (Aug. 3, 2015) .............................................................13, 20, 21

*Sanchez v. Western Pizza Enterprises, Inc.*,
  172 Cal. App. 4th 154 (2009) ............................................................44

*Serafin v. Balco Properties Ltd., LLC*,
  235 Cal. App. 4th 165 (2015) .....................................................51, 52

*Serpa v. California Surety Investigations, Inc.*,
  215 Cal. App. 4th 695 (2013) .....................................................14, 45

*Slaught v. Bencomo Roofing Co.*,
  25 Cal. App. 4th 744 (1994) ..............................................................21

*Smith, Valentino & Smith, Inc. v. Superior Court*,
  17 Cal. 3d 491 (2004) ......................................................................29

*Swenson v. File*,
  3 Cal. 3d 389 (1970) ........................................................................43

*Trivedi v. Curexo Tech. Corp.*,
  189 Cal. App. 4th 387 (2010) ............................................................16

ix

*Wolschlager v. Fidelity National Title Insurance Co.*,
   111 Cal. App. 4th 784 (2003) .............................................................................21

**California Statutes**

Cal. Civ. Proc. Code
   § 128.7(b)(1) ...................................................................................................37
   § 128.7(b)(3) ...................................................................................................37
   § 2023.030(a) ..................................................................................................37

Cal. Civil Code § 1643.........................................................................................43

## I.    INTRODUCTION

In this putative class action, Plaintiff Lorrie Poublon ("Plaintiff") a former employee of Defendants/Appellants C.H. Robinson Co. and C.H. Robinson Worldwide, Inc. (together, "CHRW") challenges her classification as an exempt employee.  During her employment, and before she instituted this litigation, Plaintiff/Appellee entered into a valid agreement with CHRW to arbitrate any and all claims arising out of her employment –  including the claims asserted in the operative complaint – on an individual basis and not as part of a class or representative action against CHRW.  When Plaintiff instituted this action, CHRW sought an order compelling Plaintiff to submit her claims to individual arbitration, and dismissing the class and representative allegations, in accordance with the terms of the agreement.  The District Court (Hon. Christina A. Snyder presiding) denied the motion, concluding erroneously that the agreement was unconscionable, and therefore unenforceable.  This Court should correct the error of the court below, and direct it to enter an order granting CHRW's motion in its entirety.

## II.    STATEMENT OF JURISDICTION

This court has jurisdiction over an appeal from an order denying a motion to compel arbitration under 9 U.S.C. § 16(a)(1)(B).  *Ferguson v. Countrywide Credit Industries, Inc.*, 298 F.3d 778, 780 (9th Cir. 2002).

1

## III.    STATEMENT OF ISSUES PRESENTED FOR REVIEW

A.    Did the District Court err in holding that the CHRW's  Dispute Resolution Procedure (the "DRP") exhibited more than a minimal degree of procedural unconscionability when Plaintiff was given ample time to review the DRP and her execution of the DRP was not a condition of her employment at CHRW?

B.    Did the District Court err in holding that the DRP's venue provision is substantively unconscionable when the DRP permits the parties to agree upon an appropriate venue and Defendant agreed to arbitrate the dispute in the county in which Plaintiff was employed, when the arbitrator had authority to orde a different venue for good cause, and when forum selection clauses are fully enforceable in judicial actions?

C.    Did the District Court err in holding that the DRP's confidentiality provision is substantively unconscionable when California courts, interpreting California law, have repeatedly found substantially identical confidentiality provisions enforceable as a matter of law?

D.    Did the District Court err in holding that that the DRP's provisions authorizing an award of attorneys' fees and costs as a sanction for certain types of conduct are substantively unconscionable when these provisions simply give the

2

arbitrator the same power that a court would have to award sanctions for frivolous, dilatory and/or abusive conduct?

E.     Did the District Court err in holding that the DRP contains a substantively unconscionable unilateral modification provision when nothing in the DRP authorizes Defendant to modify the parties' arbitration obligations and when California courts have enforced unilateral modification provisions under California law?

F.     Did the District Court abuse its discretion in declining to sever any unconscionable provisions to render the DRP enforceable when the DRP contains at most one problematic provision, the parties agreed that any unlawful provisions would be severed, and pursuant to California law, it is an abuse of discretion to refuse to enforce a contract where it contains only one unlawful provision which can be eliminated by severance?

## IV.     STATEMENT OF THE CASE

### A.     Plaintiff Agrees To Resolve Any Claims Against CHRW Exclusively Through Arbitration On An Individual Basis.

Plaintiff began working for CHRW on May 7, 2007 as an Account Manager in Los Angeles, California.  (EOR 2:236 at ¶ 3.)[1]  After she had been employed for over 7 months, on December 28, 2007, Plaintiff executed a Bonus Incentive

---

[1] All evidence cited herein is contained in the concurrently-filed Excerpts of Record and is cited as "EOR [volume number]:[page number]:[lines]."

Agreement containing a Dispute Resolution Provision ("DRP"), in which she agreed to mediate, and if mediation was unsuccessful, to arbitrate any and all claims she might have against CHRW in accordance with the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association and the Company's Employment Dispute Mediation/Arbitration Procedure ("EDMAP").[2]  (EOR 2:236 at ¶¶ 4, 5; EOR 2:239-321.)

Approximately one year later, on December 15, 2008, Plaintiff signed an Incentive Bonus Agreement (the "IBA") (a document similar to the Bonus Incentive Agreement) in which she once again agreed to the DRP, which contained the agreement not to bring a class or collective action.  (EOR 2:236 at ¶ 6; EOR 3:328-345.)  Plaintiff signed three more IBAs containing the DRP on December 23, 2009, December 22, 2010, and December 23, 2011.  The last was Plaintiff's final Incentive Bonus Agreement before her separation from CHRW.  (EOR 2:237 at ¶¶ 7-9; EOR 3:328-345.)

Each IBA supersedes the prior one.  Thus, the operative IBA is the one Plaintiff signed on or about December 23, 2011.  The 2011 IBA was similar to the prior ones.  Most importantly, it contained the critical DRP, which provides:

---

[2] Copies of the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association and EDMAP were attached as Exhibits B and C, respectively to the Declaration of Kathy Arnold filed concurrently with CHRW's motion for an order compelling Plaintiff to submit her claims to individual arbitration.  (EOR 2-3:245-321.)

You and the Company agree that, except as provided below, all Claims the Company might bring against You and all claims You might bring against the Company and/or any of its officers, directors, or employees shall be deemed waived unless submitted to mediation, then, if mediation is unsuccessful, to final and binding arbitration in accordance with the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association, modified as follows: (1) the arbitration need not actually be administered by the American Arbitration Association; (2) any mediation or arbitration shall be governed by the Company's Employment Dispute Mediation/Arbitration Procedure, which is available on the Company Intranet; (3) dispositive motions shall be permissible and not disfavored in any arbitration, and the standard for deciding such motions shall be the same as under Rule 56 of Federal Rules of Civil Procedure, (4) except on a substantial showing of good cause, discovery will be limited to the exchange of relevant documents and three depositions per side; and (5) except as mutually agreed at the time between You and the Company, *neither You nor the Company may bring any Claim combined with or on behalf of any other person or entity, whether on a collective, representative, or class action basis or any other basis*.

(EOR 2:237 at ¶ 9; EOR 3:341(emphasis added).)

CHRW's EDMAP provides that any arbitration procedure pursuant to its procedures, is "deemed to be an arbitration proceeding subject to the Federal Arbitration Act, 9 U.S.C. §§1016." (EOR 2:236 at ¶ 5; EOR 3:320.)

The terms of the DRP were not themselves negotiable. Plaintiff could either reject the entire IBA—along with its financial bonus and the obligation to mediate and arbitrate—or accept the bonus and also the DRP. (EOR 3:362.) Plaintiff did not have to sign the IBA to keep her job; she did have to sign the IBA to receive the financial bonus component of her compensation. (EOR 3:357-359.)

5

Plaintiff was presented the 2011 Incentive Bonus Agreement by her supervisor, Gerry Nelson. (EOR 3:354.) The interplay between Mr. Nelson and Plaintiff revolved largely around the amount of the bonus; according to Mr. Nelson, they did not discuss the DRP. (EOR 3:354-356, 360-361.) Instead, Mr. Nelson presented the IBA to Plaintiff, gave her time to take it home and review it, and stated he would answer any questions about the IBA if she had them. *Id.* When presented with the 2011 IBA, Plaintiff took it home, had some dialogue with Mr. Nelson, and ultimately signed the IBA and returned it to CHRW. (EOR 3:363.)

### B.   The Southern District of California Enforces the DRP In The Matter of *Grabowski v. C.H. Robinson Company, et al.*

On August 9, 2010, another Account Manager previously employed by CHRW instituted a putative class action entitled *Alex Grabowski v. C.H. Robinson Company, Inc.*, Case No. 10-cv-1658-WQH-BGS in United States District Court for the Southern District of California. On September 19, 2011, that court granted CHRW's Motion for an Order Directing Arbitration and Dismissing, or in the Alternative Staying the Action. In a published opinion, the court held that the Dispute Resolution Procedure which the *Grabowski* plaintiff had signed (which was substantially identical to the DRP executed by plaintiff here) was not unconscionable and enforced it according to its terms. *See Grabowski v. C.H. Robinson Company,* 817 F. Supp. 2d 1159 (S.D. Cal. 2011). Specifically, the court

dismissed the plaintiff's class and representative claims, and ordered him to pursue his individual claims in arbitration. *Id.* at 1181, 1182.

### C. Violating The DRP, Plaintiff Institutes This Action In State Court.

Plaintiff separated from employment with CHRW in February 2012. (EOR 3:372-373.) On March 16, 2012, Plaintiff – who was now represented by the same counsel who had brought the *Grabowski* matter – demanded mediation *pursuant to the terms of the IBA.* (EOR 3:398 at ¶ 49, 347 at ¶ 3, 348-350.) The parties conducted mediation on May 18, 2012, which was unsuccessful. On June 13, 2012, after an unsuccessful mediation, Plaintiff filed the instant judicial action in the Los Angeles County Superior Court alleging a class and collective action against CHRW. (EOR 3:428-469.) CHRW removed this action to the United States District Court for the Central District of California on August 1, 2012. (EOR 3:420.) On September 7, 2012, pursuant to the stipulation of the parties and the Court's Order, Plaintiff filed a First Amended Complaint. (EOR 3:370-419.)

### D. CHRW Moves To Stay This Action, Compel Arbitration, And Dismiss Plaintiff's Class And Representative Allegations.

On November 5, 2012, CHRW filed a Motion To Stay Pursuant to 9 U.S.C. § 3; And To Dismiss Class And Representative Allegations. (EOR 2:206-234.) Plaintiff then demanded discovery to oppose the motion, and the motion was taken

off calendar while the parties engaged in limited discovery regarding the circumstances surrounding the execution of the IBA. Disputes arose as to the proper scope of discovery, which were not fully resolved until late 2014. The parties then agreed to re-set the motion for hearing and to complete briefing on the motion.

### E. The District Court Erroneously Denies The Motion.

The District Court, Hon. Christina A. Snyder presiding, heard CHRW's motion on January 12, 2015. (EOR 1:29-44.) That same day, the court issued a ruling denying the motion on the grounds that the DRP was unconscionable and therefore unenforceable. (EOR 1:1-28.) The court held that the DRP was procedurally unconscionable because it was a contract of adhesion and because the applicable arbitration rules were not attached to the IBA, only incorporated by reference. (EOR 1:6-7.) The District Court further concluded that the DRP was substantively unconscionable because it (i) excluded claims by the company for injunctive or equitable relief, (ii) designated Hennepin County, Minnesota as the location of the arbitration, (iii) provided that the arbitration would be confidential, (iv) authorized the arbitrator to award attorneys' fees and costs to CHRW under certain circumstances, and (v) allowed the company to modify the arbitration rules unilaterally. (EOR 1:9-23.) The District Court further concluded that the DRP was permeated by unconscionability and, on that basis, declined to sever any

8

unconscionable provisions to render the agreement enforceable. (EOR 1:23-25.) The District Court's ruling was error, as will be demonstrated below.

## V.   STANDARD OF REVIEW

This Court reviews an order denying a motion to compel arbitration *de novo*. *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1152 (9th Cir. 2004) ("The district court's decision to grant or deny a motion to compel arbitration is reviewed de novo."); *Ferguson*, 298 F.3d at 780 ("We review de novo a district court's denial of a motion to compel arbitration.").

## VI.   SUMMARY OF ARGUMENT

This Court must determine the validity of the DRP under California law. Under that law, the DRP is not unconscionable. To void a contract on unconscionability grounds, California law requires that the contract exhibit both procedural and substantive unconscionability. Moreover, the contract must be so permeated by unconscionability that the court cannot sever any unconscionable provisions and enforce the remainder of the agreement. Here, the District Court erred in holding that the DRP exhibits more than a minimal degree of procedural unconscionability, and that it is permeated by substantive unconscionability. In fact, the DRP contains at most one substantively unconscionable provision, and that provision can easily be severed. Under California law, in such circumstances,

it is an abuse of discretion to fail to sever the problematic provision and enforce the remainder of the agreement.

The District Court concluded that the DRP was procedurally unconscionable because it was a contract of adhesion, and because the applicable arbitration rules were not attached. While the DRP was not negotiable, it was not a condition of employment, only a condition to receive an incentive bonus amounting to – at most – 25% of Plaintiff's annual compensation. Under California law, these facts establish at most a "minimal" degree of procedural unconscionability. Contrary to the District Court's holding, the failure to attach the arbitration rules does not add to the procedural unconscionability unless those rules contain unfair surprises. Here, the rules were fair. Thus, incorporating them by reference does not affect the validity of the arbitration agreement, just as it incorporation by reference would not affect the validity of any other contract.

The District Court also concluded that the DRP was substantively unconscionable because it contained a forum selection clause designating Hennepin County, Minnesota as the location of the arbitration, required that the arbitration be confidential, allowed the company to recover attorneys' fees and costs in certain situations, and was subject to unilateral modification by the company. All of these conclusions were erroneous. First, the forum selection clause required arbitration in Minnesota only if the parties could not agree on an

alternate location, and only if the arbitrator agreed that Minnesota was the proper venue. Since CHRW stipulated in open court to conduct Plaintiff's arbitration in California, the forum selection clause should have been a non-issue. Second, the DRP's confidentiality clause is substantially identical to clauses which the California courts have approved and enforced. The federal authorities on which the District Court relied are distinguishable, and carry less weight in matters of California law than the opinions of the California courts. Third, the provision allowing CHRW to recover attorneys' fees and costs simply gives the arbitrator the same power that a court would have to award sanctions for frivolous, dilatory and/or abusive conduct, and thus cannot be unconscionable. Fourth, nothing in the DRP or the incorporated arbitration rules authorized the company to modify the arbitration agreement or rules. Absent an express reservation of that right, California law requires that the court construe the contract not to allow such modifications, precisely to avoid any conflict with applicable law. In any event, even an express reservation of that right would not invalidate the arbitration agreement as, once again, the California courts have enforced arbitration agreements containing precisely such provisions.

Lastly, the District Court erred in concluding that the DRP was permeated by unconscionability and could not be saved by severing any unconscionable provisions. The DRP contains at most one problematic provision – the carve-out

11

allowing the company to seek injunctive or equitable relief in court. Even if this provision is unconscionable, under California law, it is an abuse of discretion to refuse to enforce a contract where it contains only one unlawful provision which can be eliminated by severance. Here, the carve-out is a single sentence within the definition of arbitrable claims and can therefore be easily deleted without affecting the remainder of the agreement. As such, California law requires that the court enforce the agreement after severing the carve-out provision.

## VII. LAW AND ARGUMENT

### A. The DRP Is Enforceable Pursuant To California Law.

To evaluate the validity of an arbitration agreement, federal courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Accordingly, because Plaintiff was employed in California, this Court must analyze the validity of the DRP under California law. *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) ("[Plaintiff] was employed in California; we therefore evaluate Circuit City's arbitration agreement under the contract law of that state."); *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (2002) ("Adams argues that the DRA is an unconscionable contract of adhesion. Because Adams was employed in California, we look to California contract law to determine whether the agreement is valid.")

**B.**     **The District Court Erred In Holding That The DRP Evinces More Than A Minimal Degree Of Procedural Unconscionability.**

California law determines procedural unconscionability by focusing upon two factors: oppression or surprise. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006). Oppression arises from "an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Nagrampa*, 469 F. 3d at 1280. "Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Ferguson*, 298 F.3d at 783 (citation and internal quotation marks omitted). Both must exist to find unconscionability; "'a sliding scale is invoked . . . In other words the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to conclusion that the term is unenforceable and vice versa.'" *Sanchez v. Valencia Holding Company LLC*, ____ Cal. 4th ____, No. S199119, 2015 WL 4605381, at *4 (Aug. 3, 2015) (citation and internal quotation marks omitted).

The District Court improperly concluded that the DRP "exhibit[ed] a significant degree of procedural unconscionability" both because it was an "oppressive" "take it or leave it" contract of adhesion and because the applicable arbitration rules were not attached to it created unfair "surprise." (EOR 1:6-9.) Both findings are wrong as a matter of law.

13

California courts have repeated time and time again that "[w]hen . . . there is no other indication of oppression or surprise, the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high." *Serpa v. California Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 704 (2013) (internal quotations marks and citations omitted); *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 796 (2012) (same); *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 981-82 (2010) (same); *Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1470-71 (2009) (adhesion alone creates only "limited" procedural unfairness). Indeed, in finding that the IBA was "oppressive", the District Court was improperly swayed by its incorrect conclusion that Plaintiff would lose her job if she did not sign the DRP, or that she would lose 25% of her compensation. (EOR 1:6.)  However, nothing required Plaintiff to enter into the IBA *in order to remain employed*.  To the contrary, the IBA was not even offered to her until she had already been employed for more than seven months.  (EOR 2:236 at ¶¶ 3-4.)  Merely because, as the District Court found, that the IBA includes "Your continued employment" as one element of the consideration for the agreement does not demonstrate that Plaintiff was *required* to enter into the IBA in order to keep her job.  A mere recital that "continued employment" furnishes consideration for a promise is not equivalent to stating that continued employment is contingent on the promise.

Although Plaintiff testified that she "understood that [she] needed to sign the Incentive Bonus Agreement in order to . . . continue to be employed," (EOR 2:152 at ¶ 4) she failed to identify any language in the IBA supporting that belief, or any communication from CHRW to that effect. The District Court erred by relying upon Plaintiff's mistaken belief that signing the IBA was mandatory. The District Court's error cannot serve as a basis for finding it procedurally unconscionable.

In addition, while the District Court concluded that had Plaintiff declined to participate in CHRW's bonus program, she would have lost only the opportunity to earn an Incentive Bonus which amounted to at most 25% of her total annual compensation (EOR 1:6), this misses the point. Plaintiff, even if she had refused to sign the IBA, would still have kept her job. Thus any adhesiveness or oppression in the IBA is markedly lower than the "minimal" degree of procedural unconscionability present in *Serpa, Ajamian*, *Dotson*, and *Roman*. In addition, the IBA advised Plaintiff that "[y]ou may wish to consult with an attorney prior to signing this agreement" (EOR 2:240; EOR 3:323, 329, 335, 341), and she was permitted to take the document home with her and have it reviewed before signing (EOR 3:360-361).

As for surprise, the IBA is a one-page document in a consistent typeface, of which the DRP is the longest provision. Plaintiff signed a new IBA each year, and thus had multiple occasions to be reminded of the DRP, to familiarize herself with

15

it, and to consult with an attorney about it. (EOR 2:240; EOR 3:323, 329, 335, 341.) Indeed, the only element of surprise identified by the District Court was that CHRW "did not provide plaintiff with a copy of either the American Arbitration Association's rules or defendants' Arbitration Procedures, both of which plaintiff became subject to by signing the IBA." (EOR 1:7.)[3]

The California Courts of Appeal have issued numerous decisions addressing whether failure to attach the arbitration rules to an arbitration agreement is procedurally unconscionable, with seemingly inconsistent results. One line of cases, relied upon by the District Court, holds that "failure to provide a copy of the arbitration rules to which the employee would be bound . . . support[s] a finding of procedural unconscionability." *Trivedi v. Curexo Tech. Corp.*, 189 Cal. App. 4th 387, 393 (2010) (collecting cases). On the other hand, multiple contemporaneous decisions hold that failure to attach the arbitration rules, by itself, "is insufficient grounds to support a finding of procedural unconscionability." *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1472 (2013); *see also Lane v. Francis Capital Management, LLC*, 224 Cal. App. 4th 676, 690 (2014) ("We agree that the failure to provide a copy of the arbitration rules could be a factor in support of a

---

[3] The District Court also suggested that unfair surprise could result if CHRW exercised its right to unilaterally modify the arbitration rules. The District Court did not find that CHRW had done so, and there is no evidence in the record that it did. Accordingly, this alleged term of the agreement is more properly viewed through the lens of substantive unconscionability and will be addressed in that discussion.

finding of procedural unconscionability, but disagree that the failure, by itself, is sufficient to support a finding of procedural unconscionability.") (citation omitted); *Bigler v. Harker School*, 213 Cal. App. 4th 727, 737 (2013) (finding no procedural unconscionability notwithstanding failure to attach AAA rules).

Faced with apparently conflicting authorities, the District Court should have examined them more carefully to determine whether they could be harmonized and/or which line of authority bore the closest relationship to the facts before it. Instead, the District Court simply noted that both *Lane* and *Peng* acknowledge that, in some cases, failure to attach the arbitration rules could increase the procedural unconscionability of an adhesive arbitration agreement. (EOR 1:8 (citing *Lane,* 224 Cal. App. 4th at 690 and *Peng*, 219 Cal. App. 4th at 1470-72).) However, both *Lane* and *Peng* explain the *circumstances* where failure to attach the arbitration rules would be unconscionable and distinguish the cases on which the District Court relied. Specifically, *Lane* reviewed *Trivedi*, *Harper v. Ultimo*, 113 Cal. App. 4th 1402 (2003) and *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702 (2004) and concluded the failure to attach the arbitration rules supported a finding of procedural unconscionability only where "the failure would result in surprise to the party opposing the arbitration." *Lane*, 224 Cal. App. 4th at 690 ("All of the cases relied upon by *Trivedi* can be analyzed under this principle.") *Peng* similarly reviewed these three cases and distinguished each on the grounds that the

unattached rules contained substantively unconscionable provisions which would have defeated the other party's reasonable expectations. *Peng*, 219 Cal. App. 4th at 1471-72. Notably, in both *Lane* and *Peng*, the court assumed that the arbitration contract was adhesive in nature, but nonetheless held that the degree of procedural unconscionability was minimal or non-existent. *Peng*, 219 Cal. App. 4th at 1470; *Lane*, 224 Cal. App. 4th at 689-91.

Had the District Court taken this additional step—as it was required to do—it would have realized that *Lane* and *Peng* are the more applicable authorities, as the arbitration rules at issue here contain no harsh or one-sided terms comparable to those in *Trivedi*, *Harper* and *Fitz*.[4] Instead, the District Court brushed *Lane* and

---

[4] Multiple District Courts have reached this conclusion. *See, e.g.,Lucas v. Gund, Inc.*, 450 F. Supp. 2d 1125, 1131 (C.D. Cal. 2006) ("Agreements which incorporate the rules of a third-party organization without providing the employee with those rules at the time of signing can be procedurally unconscionable if the employee is not provided a copy of the rules upon signing the agreement . . . However, in those cases, the decisions seem to be based on the additional fact that the rules were not fair to the weaker party."); *Sullivan v. Lumber Liquidators, Inc.*, No. C-10-1447 MMC, 2010 WL 2231781, at *5 (N.D. Cal. June 2, 2010) (distinguishing *Harper* because AAA rules incorporated by reference do no limit available remedies and there was no unfair surprise); *Howard v. Octagon, Inc.*, No. C 13-1111 PJH, 2013 WL 5122191, at *15-16 (N.D. Cal. Sept. 13, 2013) (declining to follow *Trivedi* and *Harper*); *Swarbrick v. Umpqua Bank*, No. 2:08-cv-00532-MCE-DAD, 2008 WL 3166016, at *4 (E.D. Cal. Aug. 5, 2008) (Here, the arbitration provisions . . . simply incorporate the AAA rules, do not contain conflicting provisions, and do not limit the scope of available remedies. Thus, Defendants' failure in providing the AAA rules to Plaintiffs, standing alone, does not warrant a finding of procedural unconscionability."); *Miguel v. JP Morgan Chase Bank, N.A.*, No. CV 12–3308 PSG (PLAx), 2013 WL 452418, at *5 (C.D. Cal. Feb. 5, 2013) (distinguishing *Harper* and *Fitz* on the grounds that the

*Peng* aside contending that they do not abrogate the cases on which the District Court relied, when both clearly reject the District Court's reasoning that procedural unconscionability arises whenever the arbitration rules are not attached to the arbitration agreement. It then pointed to the most recent opinion addressing the issue, *Carmona v. Lincoln Millennium Car Wash, Inc.*, 226 Cal. App. 4th 74 (2014), and concluded that *Peng* and *Lane* do not represent a shift in the law because *Carmona* follows *Trivedi* and *Harper*. (EOR 1:8 at n. 3.) *Carmona*, however, fails to even acknowledge *Peng* and *Lane*, nor does it analyze the critical issue they identify, which is whether the failure to attach the arbitration rules "would result in surprise to the party opposing the arbitration." *Compare Carmona with Lane*, 224 Cal. App. 4th at 690.

The facts of *Carmona* are also wholly inapposite. In *Carmona,* the arbitration agreement did not purport even to explain what arbitration meant, and in at least one instance, the employer only provided an employee a few minutes to decide to sign the agreement. *Carmona,* 226 Cal. App. 4th at 84-85. Here, in contrast, when presented with the 2011 IBA, Plaintiff took it home, had some dialogue with Mr. Nelson, and ultimately signed the IBA and returned it to CHRW (EOR 3:360-361). Moreover, in *Carmona,* there was strong evidence of nefarious

---

incorporated arbitration rules were fair and there was no unfair surprise); *Morgan v. Xerox Corp*., No. 2:13–cv–00409–TLN–AC, 2013 WL 2151656, at \*3-4 (E.D. Cal. May 16, 2013) (incorporation of arbitration rules by reference is permitted under California law).

conduct by the employer.  As the Court in *Carmona* stated, "[w]hat elevates this case to a high degree of procedural unconscionability, however, is the element of surprise regarding a key clause, the enforceability clause."  *Id.* at 85.  The Court added that "[t]he car wash companies **hid** the enforceability clause and the entire confidentiality subagreement by failing to translate that portion of the agreement into Spanish. Esteban and Matute Casco could not read English, and yet the car wash companies provided the enforceability clause in English only.  The car wash companies evidently knew plaintiffs required Spanish translations because they provided some translation."  *Id.* at 85 (emphasis added).  None of these egregious facts exists in the instant action; *Carmona* remains unhelpful in determining whether the failure to attach the arbitration rules here gives rise to more than a minimal degree of procedural unconscionability.  Simply put, the District Court's reliance upon *Carmona* is misplaced.

To the extent the District Court felt that *Peng* and *Lane* are in conflict with *Carmona*, *Trivedi*, *Harper* and *Fitz*, it should have attempted to predict how the California Supreme Court would rule on the issue.  *Hayes v. Cnty. of San Diego*, 658 F.3d 867, 871 (9th Cir. 2011) ("[W]here the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it") (internal quotations marks omitted).  That Court's recent decision in *Sanchez v. Valencia Holding Company LLC*, __ Cal. 4th __,

No. S199119, 2015 WL 4605381 (Aug. 3, 2015) provides a strong indication that it would favor *Lane* and *Peng* over *Trivedi*, *Harper* and *Fitz*. In *Sanchez v. Valencia*, the Supreme Court clarified that "the application of [the] unconscionability doctrine to an arbitration clause must proceed from general principles that apply to any contract clause." 2015 WL 4605381, at *5. This holding follows the directive of the United States Supreme Court that the Federal Arbitration Act allows states to invalidate agreements to arbitrate based on "generally applicable contract defenses, such as fraud, duress or unconscionability, **but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue**." *AT&T Mobility LLC v. Concepcion*, ___ U.S. ____, 131 S. Ct. 1740, 1746 (2011) (emphasis added; internal quotation marks and citation omitted).

Outside the arbitration context, there is nothing unconscionable about a contractual provision which incorporates an external document by reference. "Under California law, parties may validly incorporate by reference into their contract the terms of another document." *Slaught v. Bencomo Roofing Co.*, 25 Cal. App. 4th 744, 748 (1994) (internal quotation marks and citation omitted); *Wolschlager v. Fidelity National Title Insurance Co.*, 111 Cal. App. 4th 784, 791 (2003) ("All that is required is that the incorporation be clear and unequivocal and that the plaintiff can easily locate the incorporated document."); *Amtower v.*

*Photon Dynamics, Inc.*, 158 Cal. App. 4th 1582, 1608 (2008) ("To impliedly incorporate an external document by reference, the subject document must contain some clear and unequivocal reference to the fact that the terms of the external document are incorporated."). Hence, the same must be true for provisions in arbitration agreements incorporating external arbitration rules by reference.

> Under general California rules of contract interpretation, matters like the AAA rules can be incorporated into a contract by reference provided the incorporation is clear and the incorporated rules are readily available. [citation] . . . [Plaintiff] essentially argues that arbitration agreements should be treated differently from other contracts with respect to incorporation by reference. This is an argument the Court cannot accept given the Supreme Court's clear direction that a "state statute or judicial rule that applies only to arbitration agreements, and not to contracts generally, is preempted by the FAA." (*citing Kilgore v. KeyBank, Nat'l Assoc.,* 673 F.3d 947, 956 (9th Cir.2012).[5]

*Ulbrich v. Overstock.Com, Inc.*, 887 F. Supp. 2d 924, 932-33 (2012).

Thus, if faced with the issue, the California Supreme Court would reject the District Court's interpretation of *Carmona*, *Trivedi*, *Harper* and *Fitz* and instead follow the reasoning of *Lane* and *Peng*. Accordingly, the District Court erred by finding significant evidence of procedural unconscionability; there was, at most, minimal procedural unconscionability here. Thus, for the IBA to be

---

[5] Any other result would conflict with the FAA. "If a state treats arbitration differently, and imposes on form arbitration clauses more or different requirements from those imposed on other clauses, then its approach is preempted by § 2 of the Federal Arbitration Act." *Oblix, Inc. v. Winiecki*, 374 F.3d 488, 492 (2004).

unenforceable, it must be exhibit a high degree of substantive unconscionability. It does not.

### C. The District Court Erred In Holding That The DRP's Provisions Regarding Venue, Confidentiality, Attorneys' Fees and the Incorporation of External Rules Are Substantively Unconscionable.

The District Court erred by finding that the IBA is substantively unconscionable. The District Court held that several provisions, including those concerning venue, confidentiality, attorneys' fees and the incorporation of rules from CHRW's intranet were all substantively unconscionable. The District Court's analysis, however, is legally incorrect. California law—which is controlling—unequivocally holds that these provisions are not substantively unconscionable.

#### 1. The DRP's Venue Provision Is Not Unconscionable

Section II(f) of the EDMAP provides:

> The venue of any Dispute shall be Hennepin County, MN. Unless the Parties agree or the Arbitrator otherwise directs for good reason, any hearing shall be conducted and deemed held in that county of venue, at a place convenient to the Parties as so designated by the Arbitrator.

(EOR 3:318.)

The District Court found this provision unconscionable, even though CHRW had stipulated on the record to conduct the arbitration in California. (EOR 1:12 at n. 5, 37.) The District Court reasoned that (i) CHRW's willingness to alter the provision "does not change the fact that the arbitration agreement as written is

23

unconscionable" (EOR 1:12), and (ii) the possibility that the arbitrator may find "good reason" to order a different venue did not distinguish the authorities it had identified holding forum selection clauses in arbitration agreement substantively unconscionable (EOR 1:11-12). The District Court further questioned how the plaintiff could move the arbitrator to select a different venue without initially appearing in Minnesota, which it deemed an unreasonable burden. (EOR 1:12.)

The District Court's analysis is wrong as a matter of law. First, the District Court derived its first holding from a discussion in *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000), concerning whether the court could save an agreement containing unconscionable terms by reforming it. In that context, *Armendariz* reasoned that, even if the employer were willing to reform the agreement in this manner, it would still be unenforceable as drafted, and thus the employer's willingness "can be seen, at most, as an offer to modify the contract; an offer that was never accepted." *Id*. at 125 (citing *Stirlen v. Supercuts, Inc*., 51 Cal. App. 4th 1519, 1535-36 (1997)). Here, however, the arbitration agreement, *as agreed to by the parties*, expressly provides that the parties may agree to a venue other than Hennepin County, Minnesota. Hence, no reformation is required and CHRW's willingness is not "an offer to modify the contract," but rather a performance of its terms.

24

Indeed, the California Court of Appeal distinguished *Armendariz* on precisely this ground in *Blake v. Ecker*, 93 Cal. App. 4th 728 (2001), *disapproved of on other grounds by Le Francois v. Goel,* 35 Cal. 4th 1094 (2005). There, unlike in *Armendariz*, the arbitration agreement included a "conformance with law" clause providing:

> If any limitation, covenant or condition [of this agreement] shall be deemed to be unreasonable and unenforceable by a court or arbitrator of competent jurisdiction, then this Agreement shall thereupon be deemed to be amended to provide for modification of such limitation, covenant and/or condition to such extent as the court or arbitrator shall find to be reasonable and such modification shall not affect the remainder of this Agreement.

*Blake*, 93 Cal. App. 4th at 734 n. 3. The court concluded that the holding of *Armendariz* was no bar to reforming the contract to render it enforceable.

> Here, the parties *agreed in advance* that the court could effect any necessary modifications in order to remove any "unreasonable and unenforceable" provisions. Thus, the employer's willingness to accept a severance in order to save the arbitration clause would not be an "*offer* to change" the clause, but rather a reliance upon an existing and express clause of the contract.

*Blake*, 93 Cal. App. 4th at 746 (emphasis in original). Similarly here, CHRW is not seeking to change the arbitration agreement as the agreement already allows the parties to select an alternate venue through mutual agreement. (EOR 3:318.) The *Armendariz* rule cited by the District Court therefore does not apply. Since both parties agree that the arbitration shall be conducted in California, the venue provision does not place any unfair burden on Plaintiff and does not support a

finding of procedural unconscionability.

Second, the California courts have held that a provision allowing the arbitrator to modify a term in an arbitration agreement for "good cause" or some similar standard overcomes what would otherwise be an unconscionable term. In *Dotson*, for example, the agreement limited depositions to "one individual and any expert witness designated by the other party," but also allowed additional depositions "where the Arbitrator . . . so orders, upon a showing of need." *Dotson,* 181 Cal. App. 4th at 982. The trial court found the provision unconscionable because it might not allow the employee the "adequate discovery" required by *Armendariz. Dotson,* 181 Cal. App. 4th at 983. The Court of Appeal disagreed, noting that "[a]lthough the . . . agreement purports to limit discovery to one deposition of a natural person, the agreement gives the arbitrator . . . broad discretion . . . to order the discovery needed to sufficiently litigate the parties' claims." *Id*. at 984. The court further observed that "[w]e assume that the arbitrator will operate in a reasonable matter in conformity with the law." *Id*. Hence, to the extent additional discovery was required to render the agreement enforceable, the court must assume that the arbitrator would allow it. The provision authorizing the arbitrator to order additional discovery was therefore sufficient to ensure that the employee would obtain whatever discovery was needed to render the agreement enforceable. *Id.* at 983-84.

Similarly, in *Mercuro v. Superior Court*, 96 Cal. App. 4th 167 (2002), the agreement limited both sides to three depositions and an aggregate of 30 discovery requests of any kind, but allowed the arbitrator to grant additional discovery requests "upon a showing of good cause." *Mercuro,* 96 Cal. App. 4th at 182. The court noted that the limitation could disadvantage the employee in various ways, but, in each case, the disadvantage would establish the necessary good cause to allow additional discovery. *Id*. at 182-84. Since the agreement contained such a provision, "we are unable to say [Defendant's] arbitration agreement does not afford adequate discovery rights to employees seeking to vindicate statutory rights as required under *Armendariz*." *Id*. at 184; *see also Abeyrama v. J.P. Morgan Chase Bank,* No. CV12–00445 DMG (MRWx), 2012 WL 2393063, at *4 (C.D. Cal. June 22, 2012) ("Here, the agreement allows for either party to apply to the arbitrator for further discovery upon a showing of sufficient cause [citation]. Thus, the discovery provision is not substantively unconscionable.") (internal alterations and quotation marks omitted); *Jones-Mixon v. Bloomingdale's, Inc.,* No. 14–cv–01103–JCS, 2014 WL 2736020, at *10 (N.D. Cal. June 11, 2014) ("[A] provision allowing the arbitrator to grant additional discovery requests lessens the degree, if any, of substantive unconscionability").

Applying the same logic here, the provision allowing the arbitrator to transfer venue "for good reason" ensures that Plaintiff would not be required to

27

arbitrate in Minnesota if it would prevent her from effectively vindicating her legal rights, and the venue provision is not unconscionable. The District Court's concern that plaintiff would have to first appear in Minnesota to request a transfer of venue ignores the nature of arbitration. Plaintiff could easily make the request in writing, or by a simple telephone conference with the arbitrator. There is no reason why a personal appearance in Minnesota would be necessary.

Finally, the District Court's conclusion that requiring Plaintiff to arbitrate in Minnesota would be unconscionable depends on cases which are no longer persuasive in light of the holdings in *AT&T Mobility v. Concepcion* and *Sanchez v. Valencia Holding Co*. As noted above, those decisions clarify that courts must apply the same standards to arbitration agreements as to any other contract. Since California courts regularly enforce contractual forum selection clauses when the action is pending in a judicial forum, the result must be the same in arbitration.

> [I]f there is a mandatory forum selection clause, the test is simply whether application of the clause is unfair or unreasonable, and the clause is usually given effect. Claims that the previously chosen forum is unfair or inconvenient are generally rejected. [Citation.] A court will usually honor a mandatory forum selection clause without extensive analysis of factors relating to convenience. [Citation.]

*Olnick v. BMG Entertainment*, 138 Cal. App. 4th 1286, 1294 (2006). The California Supreme Court has clarified that "[m]ere inconvenience or additional expense is not the test of unreasonableness " which would justify disregarding a

contractual forum selection clause. *Smith, Valentino & Smith, Inc. v. Superior Court*, 17 Cal. 3d 491, 496 (2004).

Indeed, California courts have enforced forum selection clauses requiring employees to bring employment-related claims in the state where the employer is headquartered. *Olnick*, 138 Cal. App. 4th at 1305-06. The fact that the clause was adhesive is not sufficient reason to deny enforcement. *Intershop Communications, Inc. v. Superior Court*, 104 Cal. App. 4th 191, 202 (2002) ("A forum selection clause within an adhesion contract will be enforced as long as the clause provided adequate notice to the party that he was agreeing to the jurisdiction cited in the contract." ) (internal quotation marks, citation and alteration omitted); *see also Furda v. Superior Court*, 161 Cal. App. 3d 418, 426-27 (1984) ("Even if the clause were adhesive, it would be fully enforceable absent a showing that it was outside the reasonable expectations of the weaker or adhering party or that enforcement would be unduly oppressive or unconscionable."); *Net2Phone, Inc. v. Superior Court*, 109 Cal. App. 4th 583, 588-89 (2003) ("The fact that the forum selection clause may have been a "take it or leave it" proposition, and not vigorously "bargained for" . . . does not make the clause unenforceable.") (internal quotation marks in original).

None of the cases on which the District Court relied acknowledge the holding of *Smith* and the numerous cases which apply it, and each applies a

different standard to forum selection clauses in arbitration agreements from that

applicable in a judicial action. Their reasoning is therefore no longer tenable in

light of the United States Supreme Court's ruling in *AT&T Mobility* and the

California Supreme Court's recent holding in *Sanchez v. Valencia Holding Co*.

This Court should conclude that, were the issue presented to the California

Supreme Court, it would decline to follow the holdings in *Bolter v. Superior Court*,

87 Cal. App. 4th 900, 910 (2001); *Nagrampa*, and *Pinedo v. Premium Tobacco

Stores, Inc.*, 85 Cal. App. 4th 774 (2000),

In sum, the venue clause contained in the IBA is not substantively

unconscionable.

### 2. The DRP's Confidentiality Provision Is Not Unconscionable

Section II(l) of the EDMAP provides:

> All aspects of the arbitration, including without limitation, the record
> of the proceeding, are confidential and shall not be open to the public,
> except (a) to the extent both Parties agree otherwise in writing, (b) as
> may be appropriate in any subsequent proceedings between the
> Parties, or (c) as may otherwise be appropriate in response to a
> governmental agency or legal process, provided that the Party upon
> whom such process is served shall give immediate notice of such
> process to the other Party and afford the other Party an appropriate
> opportunity to object to such process.

(EOR 3:319.)

The District Court found this provision unconscionable, relying on *Pokorny

v. Quixtar, Inc.*, 601 F.3d 987 (9th Cir. 2010); *Davis v. O'Melveny & Myers*, 485

30

F.3d 1066 (9th Cir. 2007), and *Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003). The Court reasoned that the confidentiality provision, although facially neutral, unfairly favors defendants by (1) allowing defendants to learn as "repeat players" in the arbitration process, while preventing employees from learning from similar prior cases, and (2) preventing plaintiff from sharing evidence with other claimants. (EOR 1:12-14.)

The District Court erred in applying *Pokorny*, *Davis* and *Ting* because each involves a much more restrictive confidentiality clause, and/or circumstances not present here. The District Court's "repeat player" rationale appears to refer to *Ting*, where this Court reasoned that arbitration confidentiality could allow AT&T to "place[] itself a far superior legal posture by ensuring that none of its potential opponents have access to precedent while, at the same time, AT&T accumulates a wealth of knowledge on how to negotiate the terms of its own unilaterally crafted contract." *Ting*, 319 F.3d at 1152. *Ting*, however, was a class action on behalf of 7 million customers challenging AT&T's form contract for telephone services. *Id.* In that context, it was foreseeable that there could be multiple, separate challenges to the contract from which AT&T would develop knowledge and experience which could then be applied in subsequent actions. *Id.* This action, however, involves only 261 putative class members and challenges not a uniform contract, but the decision to classify employees as exempt based on their individualized job duties.

31

Neither plaintiff nor the court has explained how CHRW could benefit from a "repeat player" effect here, where multiple, separate challenges are unlikely and there is no evidence that that job duties are substantially uniform across the putative class. *Cf. Kilgore v. KeyBank Nt. Ass'n*, 718 F.3d 1052, 1059 n. 9 (9th Cir. 2013) (distinguishing *Ting* because "[a]lthough we have found confidentiality provisions to be substantively unconscionable when applied to a large class of customers [citation], the small number of putative class members in this case (approximately 120) mitigates such concerns.").

The District Court's second rationale – that the confidentiality provision "prevent[s] plaintiff from sharing evidence with other claimants" – appears to rely on *Davis* and *Pokorny*. In *Davis*, the confidentiality provision "preclude[d] even mention to anyone not directly involved in the mediation or arbitration of the content of the pleadings, papers, orders, hearings, trials or awards in the arbitration, or even the existence of a controversy and the fact that there is a mediation or an arbitration proceeding." *Davis,* 485 F.3d at 1078 (internal quotation marks omitted). Similarly, in *Pokorny*, the confidentiality provision prohibited the plaintiff from disclosing "to any other person not directly involved in the conciliation or arbitration process (a) the substance of, or basis for, the claim, (b) the content of any such testimony or other evidence presented at an arbitration hearing or obtained through discovery; or (c) the terms [or] amount of any

arbitration award." *Pokorny*, 601 F.3d at 1001. In both cases, the court reasoned that the provision could prevent the plaintiff from contacting other employees to assist in prosecuting his case, stifle his efforts to investigate and engage in discovery, and deny him access to precedent while allowing the employer to learn from those precedents. 485 F.3d at 1078; 601 F.3d at 1002. Here, in contrast, section II(l) of the EDMAP only calls for the confidentiality of the arbitration itself, and nothing in the EDMAP restricts an employee's ability to contact others for assistance in building his case. (EOR 3:319)

The District Court further erred in declining to follow *Sanchez v. CarMax Auto Superstores LLC*, 224 Cal. App. 4th 398 (2014), which approved a substantially identical confidentiality provision. In that case, the agreement required that "the arbitration (including the hearing and record of the proceeding) be confidential and not open to the public unless the parties agree otherwise, or as appropriate in any subsequent proceeding between the parties, or as otherwise may be appropriate in response to governmental or legal process." *Id.* at 408. *Sanchez v. CarMax* held that, pursuant to California law, the provision was not substantively unconscionable, citing to a prior decision of the California Court of Appeal which similarly held that there is nothing "unreasonable or prejudicial" about the parties' agreement to keep the arbitration proceedings confidential. *Id.* (citing *Woodside Homes of Cal., Inc. v. Superior Court*, 107 Cal. App. 4th 723,

33

732 (2003)). Similarly, *Htay Htay Chin v. Advanced Fresh Concepts Franchise Corp.*, 194 Cal. App. 4th 704 (2011), approved a provision stating that "except as may be required by law, no party or arbitrator(s) may disclose the existence, content or results of any arbitration hereunder without the prior written consent of both parties." *Id.* at 714 (internal alteration omitted).

The trial court declined to follow *Sanchez v. CarMax* on the grounds that it conflicted with *Ting, Davis* and *Pokorny*, and that the California Supreme Court would be more likely to follow the latter three cases. (EOR 1:13-14.) The trial court did not explain the conflict and none exists, as the latter three cases are distinguishable, for the reasons detailed above.[6]

Moreover, to the extent there is any tension between *Sanchez v. CarMax, Htay Htay Chin*, and *Woodside Homes*, on the one hand, and *Ting, Davis* and

---

[6] Numerous courts, both federal District Courts and California Courts of Appeal, have declined to apply *Ting, Davis* and *Pokorny* to arbitration agreements containing more limited confidentiality provisions, such as those at issue in *Sanchez v. CarMax*, *Htay Htay Chin*, and here. *See, e.g., Velazquez v. Sears, Roebuck & Co.*, No. 13cv680–WQH–DHB, 2013 WL 4525581, at *5-6 (S.D. Cal. Aug. 26, 2013); *Lawler v. 24 Hour Fitness USA, Inc.*, No. B230413, 2011 WL 6062027, at *6 (Cal. Ct. App. 2d Dist. Dec. 7, 2011); *Luafau v. Affiliated Computer Services, Inc.*, No. C 06–0347 CW, 2006 WL 1320472, at *6 (N.D. Cal. May 15, 2006); *Mathis v. Screen Actors Guild Producer Pension Health Plan*, No. B220046, 2011 WL 199002, at *5 (Cal. Ct. App. 2d Dist. Jan. 24, 2011); *Henderson v. Superior Court*, No. B219024, 2010 WL 745161, at *8-9 (Cal. Ct. App. 2d Dist. Mar. 5, 2010); *Jeffrey v. Automobile Club of Southern California*, No. E056224, 2014 WL 2979775, at *6 (Cal. Ct. App. 4th Dist. July 3, 2014); *Moran v. Superior Court*, No. F061801, 2011 WL 5560178, at *16-19 (Cal. Ct. App. 5th Dist. Nov. 16, 2011); *King v. Hausfeld*, No. C–13–0237 EMC, 2013 WL 1435288, at *15-18 (N. D. Cal. April 9, 2013).

*Pokorny*, on the other, the trial court should have given greater weight to the

decisions of the California Court of Appeal. "A state appellate court's

announcement of a rule of law is a datum for ascertaining state law which is not to

be disregarded by a federal court unless it is convinced by other persuasive data

that the highest court of the state would decide otherwise." *Miller v. County of*

*Santa Cruz*, 39 F.3d 1030, 1036 n.5 (9th Cir.1994) (internal quotation marks

omitted). Here, three published opinions of the California Court of Appeal have

unanimously approved confidentiality provisions similar to the one at issue here.

The only contrary "data" identified by the District Court were decisions from this

Court involving more restrictive confidentiality provisions and inapplicable policy

considerations. And in its most recent pronouncement on the issue, this Court

cautioned against invalidating arbitration agreements on the basis of confidentiality

provisions. *Kilgore*, 718 F.3d at 1059 n. 9 ("the enforceability of the

confidentiality clause is a matter distinct from the enforceability of the arbitration

clause in general. Plaintiffs are free to argue during arbitration that the

confidentiality clause is not enforceable.") Indeed, the U.S. Supreme Court has

identified confidentiality as one of the *purposes* of arbitration. *AT&T Mobility*,

131 S. Ct. at 1749 ("The point of affording parties discretion in designing

arbitration processes is to allow for efficient, streamlined procedures tailored to the

type of dispute. It can be specified, for example, . . . that proceedings be kept

confidential to protect trade secrets.").  The totality of the relevant data does not

provide sufficient basis to disregard the unbroken line of California Court of

Appeal decisions approving confidentiality provisions similar to the one at issue

here.  The confidentiality provision in the IBA is not unconscionable.

### 3.  The DRP's Attorneys' fees Provision Is Not Unconscionable.

Section II(p) of the EDMAP, entitled "Sanctions," provides:

> The Arbitrator may award either Party its reasonable attorneys' fees
> and costs, including reasonable expenses associated with production
> of witnesses or proof, upon a finding that the claim or counterclaim
> was frivolous or brought to harass the Employee, the Company or the
> Company's personnel.

> The Arbitrator may award either Party its reasonable attorneys' fees
> and costs, including reasonable expenses associated with production
> of witnesses or proof, upon a finding that the other Party (a) engaged
> in unreasonable delay, (b) failed to cooperate in discovery, or (c)
> failed to comply with requirements of confidentiality.

(EOR 3:320.)

The District Court held, without explanation, that these provisions

"potentially offer[ed] defendants attorneys' fees for which they might not

otherwise be eligible under California law."  (EOR 1:15.)  However, as CHRW

argued below, each of these provisions is consistent with California law.  The first

provision – allowing sanctions "upon a finding that the claim or counterclaim was

frivolous or brought to harass" – mirrors Cal. Code of Civil Procedure section

128.7(c)-(d), which authorizes a court to impose "an appropriate sanction" for

violation of subsection (b), which sanction may include "some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the violation." Subsection (b), in turn, prohibits presenting to the court any "pleading, petition, written notice of motion, or other similar paper" (i) primarily for "an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," Cal. Civ. Proc. Code § 128.7(b)(1), (ii) which contains "claims, defenses, [or] other legal contentions" not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal or existing law or the establishment of new law," or (iii) whose "allegations and other factual contentions" lack "evidentiary support" and are not "likely to have evidentiary support after a reasonable opportunity for further investigation or discovery," Cal. Civ. Proc. Code § 128.7(b)(3).

As for the second provision, its first sub-part also mirrors Cal. Code of Civil Procedure section 128.7, in particular subsections (b)(1), (c), and (d). Its second sub-part mirrors the discovery sanctions provided in Cal. Code of Civil Procedure section 2023.030(a), which authorizes a court to "impose a monetary sanction that one engaging in the misuse of the discovery process . . . pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct." Finally, the third sub-part is effectively a fee-shifting provision in actions to enforce a confidentiality agreement, which would be fully enforceable under

California law.  *See, e.g., Ajaxo Inc. v. E\*Trade Group, Inc.,* 135 Cal. App. 4th 21, 59 (2005) (awarding attorneys' fees to prevailing party in action for breach of confidentiality agreement where agreement contained fee-shifting clause). Notably, none of these provisions allow CHRW to recover its fees simply because it prevailed on the merits, which was the concern Plaintiff had raised below. (EOR 1:15.)  Hence, the arbitrator "has no more powers than a judge in a court action to impose monetary sanctions . . . That the arbitrator may impose sanctions including arbitration costs for bad faith conduct during the course of litigation does violate the *Armendariz* restriction on employees being subject to forum fees, assuming such a requirement is not preempted by the FAA under *Concepcion*. *Ruhe v. Masimo Corp.*, No. SACV 11–00734–CJC(JCGx), 2011 WL 4442790, at \*4 (C.D. Cal. Sept. 26, 2011).

For these reasons, CHRW contended below that "there [is] no scenario in which defendants would be entitled to attorneys' fees under the arbitration agreement, but not in court."  (*Id*. at n. 7.)  The District Court did not attempt to identify any such scenario, but simply dismissed the argument, asserting that "Defendants have, however, taken a contrary position on the same provision in prior litigation," citing to the court's Order granting CHRW's motion to compel arbitration in the *Grabowski* action, which purported to quote from CHRW's brief in that case.  (EOR 1:15-16 at n. 7.)  Had the District Court examined the brief

38

itself, it would have seen that CHRW did not affirmatively represent or contend that the agreement allowed it to recover attorneys' fees in situations where fees would not be recoverable in a judicial action, but simply chose not to contest the plaintiff's argument that it could.  (Motion for Judicial Notice, Exs. A- C.)  This strategic decision does not amount to an admission, much less one that would bind CHRW in future litigation against a different party.

In any event, CHRW would be bound by a prior admission in a separate action only if the doctrine of judicial estoppel applied, which is does not.  Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotation marks and citation omitted).  Its purpose is "to protect the integrity of the judicial process [citation] by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 749-50 (internal quotation marks omitted).  Although "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation or principle [citation], several factors typically inform the decision whether to apply the doctrine in a particular case." *Id.* at 750 (internal quotation marks omitted). Those factors are:

> First, a party's later position must be clearly inconsistent with its
> earlier position. [citations] Second, courts regularly inquire whether

39

the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. [citation] Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, [citation], and thus poses little threat to judicial integrity. [citations] A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. [citations]

*Id.* at 750-51 (internal quotation marks omitted).

Application of the doctrine is not appropriate here. First, CHRW's position here is not "clearly inconsistent" with its position in the *Grabowski* action. In that action, CHRW simply chose not to contest Plaintiff's argument for strategic reasons, but has elected to do so here. At no point has CHRW sought to *persuade* any court that the DRP contains an unconscionable attorneys' fees provision, much less that the DRP as a whole is substantively unconscionable.

Second, in *Grabowski*, CHRW did not succeed in persuading the court to accept an inconsistent position; it was Plaintiff who succeeded in persuading the court that the attorneys' fees provision was unconscionable. A contrary determination here would not create the perception that either court was misled, only that this court examined the provision more carefully and concluded that Plaintiff's position lacked merit. This is not the type of inconsistent determination that threatens judicial integrity, but merely a normal consequence of multiple courts examining the same agreement in different actions. Were it otherwise, the

40

District Court should have followed the *Grabrowski* court in *all* respects and enforced the DRP, instead of citing portions of *Grabowski* and rejecting its overall conclusion to enforce the DRP

Finally, CHRW would not derive any unfair advantage or impose an unfair detriment on Plaintiff if allowed to contest Plaintiff's attack on the attorneys' fees provision. Plaintiff is free to advance her best arguments against the attorneys' fees provision, and CHRW's election not to contest those arguments in *Grabowski* places her in no worse position in this action than she would be had CHRW responded to those arguments there. Moreover, CHRW did not obtain any advantage from not contesting those arguments in *Grabowski*; rather, it was Plaintiff who profited by convincing the court to sever the attorneys' fees provision. To the contrary, CHRW would suffer an unfair detriment if judicial estoppel were applied here, as their decision not to contest the issue in *Grabowski* would prevent them from ever contesting the issue in any litigation, regardless of its actual merit.

The District Court therefore erred in holding that the DRP contains an unconscionable provision allowing CHRW to recover attorneys' fees and costs which would not be available in a judicial action.

### 4. The DRP's Provision Incorporating External Rules Does Not Amount To An Unconscionable Unilateral Modification Provision.

Paragraph 7 of the IBA provides: "any mediation or arbitration shall be governed by the Company's Employment Dispute Mediation/Arbitration Procedure, which is available on the Company intranet." (EOR 2:240; EOR 3:323, 329, 335, 341.)

The District Court held that this provision gave the company the ability to unilaterally modify the rules, because it incorporates the rules available on the company's intranet "which defendants presumably have the ability to alter, and does not contain any limitation on modification." (EOR 1:16.) The District Court did not identify any provision of the DRP authorizing the company to modify those rules, nor does any exist. Rather, it simply interpreted paragraph 7 to allow such modifications because the company "presumably ha[s] the ability to alter" the rules posted on its intranet. Id.

The plain language of paragraph 7 belies the District Court's interpretation. That paragraph incorporated the EDMAP "which **is** available on the company's intranet." The use of the present tense necessarily refers to the EDMAP which is posted on the company's intranet at the time the parties entered into the agreement. Adding a further limitation, such as "which is available on the Company intranet *at the time this agreement is executed*" would be redundant. However, under the

District Court's reading, any contract which incorporates an external document by reference must contain additional language specifying that it is incorporating only that version of the document in existence at the time of contracting, or the contract will be subject to modification by whichever party has the ability to modify that external document. That is not the law and never has been.

To the extent there is any ambiguity in paragraph 7, the District Court should have applied the well-established principle that "[a] contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." Cal. Civil Code § 1643. Indeed, as a general rule, "all applicable laws in existence when an agreement is made, which laws the parties are presumed to know and to have in mind, necessarily enter into the contract and form a part of it, without any stipulation to that effect, as if they were expressly referred to and incorporated." *Swenson v. File*, 3 Cal. 3d 389, 393 (1970) (internal quotation marks omitted). Applying this general principle, *Armendariz* held that "when parties agree to arbitrate statutory claims, they also implicitly agree, *absent express language to the contrary*, to such procedures as are necessary to vindicate that claim." *Armendariz*, 24 Cal. 4th at 106. Accordingly, the Supreme Court construed the agreement before it to provide for "adequate" discovery and a written arbitration award, and to impose all costs unique to arbitration on the

employer, because such provisions were necessary to render the agreement enforceable and there were no express provisions to the contrary. *Id.* at 106, 107, 113. Numerous other California courts have applied this same reasoning when enforcing agreements to arbitrate employment-related claims. *See, e.g., Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1082-1085 (2003) (construing arbitration agreement silent with regard to costs unique to arbitration forum to impose all such costs on the employer); *Nelsen v. Legacy Partners Residential, Inc.*, 207 Cal. App. 4th 1115, 1126, n. 5 (2012) (same); *Sanchez v. Western Pizza Enterprises, Inc.*, 172 Cal. App. 4th 154, 177 (2009) ("[T]he absence of express provisions requiring a written arbitration award and allowing discovery does not render the arbitration agreement unconscionable. Rather, those terms are implied as a matter of law as part of the agreement.")

Thus, if applicable law requires that the arbitration be conducted according to the rules in effect at the time the agreement was executed, courts must construe the agreement in that manner, absent express language to the contrary. This is especially true here, as the DRP also provides:

> If any portion of this dispute resolution provision is determined to be void or unenforceable, then the remaining portions of this Agreement shall continue in full force and effect, and *this Agreement may be modified to the extent necessary,* consistent with its fundamental purpose and intent, *in order to make it enforceable*.

(EOR 2:240; EOR 3:323, 329, 335, 341.) In *Casas v. CarMax Auto Superstores*

*LLC*, 224 Cal. App. 4th 1233 (2014), the California Court of Appeal held that such a "conformity clause" operated to save the arbitration agreement by preventing the employer from applying any changes to the agreement to known or accrued claims, even though its express language gave retroactive effect to such changes. *Id.* at 1237. If a conformity clause can displace an unlawful express term, certainly it can incorporate any limitations necessary to render an ambiguous term lawful.

Finally, even if the District Court's interpretation were correct, an ability to modify the EDMAP unilaterally would not render the DRP unconscionable. The California Courts of Appeal have affirmed on four separate occasions that "the implied covenant of good faith and fair dealing limits the employer's authority to unilaterally modify the arbitration agreement and saves that agreement from being illusory and thus unconscionable." *Serpa*, 215 Cal. App. 4th at 708; *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal. App. 4th 1199, 1214 (1998) ("Nautilus's discretionary power to modify the terms of the personnel handbook in [written] notice indisputably carries with it the duty to exercise that right fairly and in good faith. [citation] So construed, the modification provision does not render the contract illusory."); *Peleg v. Neiman Marcus Group, Inc.*, 204 Cal. App. 4th 1425, 1465 (2012) (following *24 Hour Fitness*); *Casas*, 224 Cal. App. 4th at 1237 (following *Serpa, 24 Hour Fitness,* and *Peleg*). Such a provision is unconscionable only if the agreement expressly contradicts what the implied

covenant would require, such as applying any modifications only prospectively. *Peleg*, 204 Cal. App. 4th at 1465; *Casas*, 224 Cal. App. 4th at 1237.

The District Court attempted to distinguish these opinions on the grounds that the agreement in *Casas* provided a specific date for any amendment, 30 days' advance notice, and posting. (EOR 1:17.) *Casas*, however, placed no weight on these facts, commenting: "Under California law . . . even a modification clause not providing for advance notice does not render an agreement illusory, because the agreement also contains an implied covenant of good faith and fair dealing." *Casas*, 224 Cal. App. 4th at 1237. The District Court then relied on this Court's decision in *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003) and District Court cases applying it, which held that a unilateral modification clause is substantively unconscionable. *Ingle*, however, failed to consider *Serpa¸ 24 Hour Fitness, Peleg,* or *Casas*, nor did it analyze whether the implied covenant of good faith and fair dealing might save the term from being unconscionable. *Ingle* and its progeny are therefore not "persuasive data" that the California Supreme Court would decide the issue differently from the consistent holdings of the California Courts of Appeal.

The District Court therefore erred in holding that the DRP contains an unconscionable provision allowing CHRW to modify the arbitration rules unilaterally.

46

### D. The District Court Erred In Refusing To Sever And/Or Reform The Carve-Out For Claims For Equitable Or Injunctive Relief.

The IBA provides:

> This Dispute Resolution Agreement shall not apply to any of the following : . . . (3) claims by the Company that include a request for injunctive or equitable relief . . .

(EOR 2:240; EOR 3:323, 329, 335, 341.)

The District Court also held that this provision lacked mutuality and was therefore substantively unconscionable. (EOR 1:10.) It then declined to sever the provision on the grounds that (i) the agreement was "permeated" with unconscionability because it contained five substantively unconscionable provisions, and (ii) it could not strike the provision and render the contract enforceable without augmenting it with additional terms, which it lacked authority to do. (EOR 1:23-25.) The District Court erred on both points.

First, the agreement contains at most one unconscionable provision, not five, as the District Court's conclusions regarding the other provisions it found unconscionable were erroneous, for the reasons detailed above. Where an arbitration agreement contains only one unconscionable provision, the court is obligated to sever it to render the agreement enforceable. In *Little*, the California Supreme Court considered an employment arbitration agreement that included a provision providing a right to an appeal an arbitration award in excess of $50,000. *Little,* 29 Cal. 4th at 1071. Recognizing that the appeal was unilateral, and thus

47

unconscionable, the California Supreme Court found that the trial court was required to sever the offending provision and enforce the balance of the agreement so that the state's public policy favoring arbitration would be enforced. *Id.* at 1072-76. In so doing, it followed the teaching in *Armendariz* that while Cal. Civil Code section 1670.5(a) "appears to give a trial court some discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement . . . it also appears to contemplate the latter course only when an agreement is "permeated" by unconscionability." 24 Cal. 4th at 122; *see also Harper*, 113 Cal. App. 4th at 1411 ("[R]efusing to enforce the entire agreement is an option only when an agreement is permeated by unconscionability.") (citing *Armendariz*, 24 Cal. 4th at 122; internal quotation marks omitted).

More recently, in *Dotson v. Amgen, Inc.,* 181 Cal. App. 4th 975 (2010), the Court of Appeal found that a trial court's refusal to sever from an arbitration agreement a provision limiting discovery was an abuse of discretion that required reversal. The Court found that the lower court abused its discretion by not severing:

> Even if we assume the discovery provision to be unconscionable, which we do not, *the trial court abused its discretion by refusing to sever it*. Where, as here, only one provision of an agreement is found to be unconscionable and that provision can easily be severed without affecting the remainder of the agreement, *the proper course is to do so*. In *Little*, the arbitration agreement included only one unlawful provision, allowing review by a second arbitrator of any award over $50,000. *Little* concluded that this provision could be severed without

disturbing the rest of the arbitration agreement and that no reformation was needed [citation].

*Dotson*, 181 Cal. App. 4th at 985 (emphasis added). The Court also reiterated the judicial preference for severing:

> Like the appellate arbitration provision in *Little*, the discovery provision in the Amgen agreement does not permeate the agreement with an unlawful purpose and *could easily have been removed without requiring reformation or augmentation of the remainder of the agreement*. [citation] . . . Again, we agree with our colleagues in Division Seven: In determining whether to sever or restrict illegal terms rather than voiding the entire contract, the overarching inquiry is whether the interests of justice … would be furthered by severance. Significantly, *the strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement*: Although the statutes appear to give a trial court discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement, it also appears to contemplate the latter course *only when an agreement is "permeated" by unconscionability*.

*Id.* at 985-986 (internal alterations and quotation marks omitted; emphasis added).

Thus, the Court of Appeal reversed the trial court's decision not to sever the problematic provision. *See McManus v. CIBC World Markets Corp.*, 109 Cal. App. 4th 76, 101-02 (2003) (severing provision in employment arbitration agreement requiring employee to pay certain arbitration costs).

If the DRP's provision allowing the Company to seek injunctive or declaratory relief in court is unconscionable, it should have been severed. This is particularly true here, where simply severing the allegedly offending provision

would facilitate enforcement of the parties' underlying arbitration agreement, and, in turn, further well-founded and long-standing public policy.

Second, the carve-out for company claims seeking injunctive or equitable relief can easily be severed without affecting the remainder of the agreement, and no additional terms are necessary. The court may simply strike the exception quoted above, and the DRP would read as follows:

> For purposes of this Agreement, "Claims" shall include, but not limited to, all claims directly or indirectly related to Your recruitment, employment, compensation or benefits (except that for any claims under an employee benefit or pension plan that specifies a claim procedure, such claim procedure must first be exhausted before a claim, if any, may be pursued under this Agreement) or termination of employment by the Company, including, but not limited to, alleged violations of [various federal statutes governing employment] and any and all claims under federal, state and local laws or regulations (including all such laws and regulations pertaining to employment or prohibiting discrimination). This Dispute Resolution Agreement shall not apply to the following: (1) Worker's Compensation claims, (2) claims related to unemployment insurance, and (3) any claims by the Company that include a request for injunctive or equitable relief, including, without limitation, claims related to the enforcement of any restrictive covenants, non-competition obligations, non-solicitation obligations and/or confidential information provisions contained in any Company policy and/or employment agreement(s) entered into between You and the Company and/or claims to protect the Company's trade secrets, confidential or proprietary information, trademarks, copyrights, patents, or other intellectual property.

(EOR 3:341.)

The District Court objected that striking the exception as outlined above "would leave a lengthy definition of covered "Claims" by the employee that must

be submitted to arbitration (including Title VII, ERISA, ADA, FLSE and OSHA claims), with no corresponding definition of covered "Claims" by the Company." (EOR 1:25.) In fact, as is apparent above, the resulting definition of "Claims" encompasses "**all** claims directly related to Your recruitment, employment, compensation or benefits . . . or termination of employment" without specifying the party bringing the claim. Hence an action by the company for breach of the confidentiality obligations in an employment agreement would be an arbitrable claim because it is a "claim directly related to Your . . . employment." Moreover, the first sentence of the preceding paragraph clarifies that the agreement to arbitrate encompasses "all Claims *the Company might bring against You* and all claims You might bring against the Company" "except as provided below." (EOR 3:341 (emphasis added).)

Even if the DRP were ambiguous as to whether it included employer claims, "given the public policy favoring arbitration [citation], and the requirement we interpret the provision in a manner that renders it legal rather than void [citation], we would necessarily construe the arbitration agreement as imposing a valid, mutual obligation to arbitrate." *Roman*, 172 Cal. App. 4th at 1473. *Serafin v. Balco Properties Ltd., LLC* is on-point:

> Serafin contends that the language of the arbitration agreement at issue in this case is similarly one-sided and provides for arbitration of only those claims an employee is likely to pursue in court. The arbitration provision states that "any and all claims arising out of or in

51

any way connected with your employment must be submitted to binding arbitration." It then lists specific examples of claims typically brought by an employee (claims of racial, sexual or other discrimination or harassment; wrongful termination, nonpayment of wages, defamation), but states that the arbitrable claims "include, *but are not limited to*," those examples.

Given this expansive language, we believe a broad interpretation of the employment-related claims that are subject to the arbitration agreement is appropriate, especially because we can see no indication in any other portion of the arbitration agreement that it applies only to claims brought by the employee. Indeed, where an arbitration agreement sets forth that "any and all" disputes between the parties will be arbitrated, courts (including this one) have found the agreement to be fully mutual in scope.

235 Cal. App. 4th 165, 182 (2015) (emphasis in original; internal alterations omitted).

Severing the carve-out for claims by the company seeking injunctive or equitable relief would therefore cure any unconscionability and leave an agreement that can be enforced as drafted, without further reformation or augmentation. The court was therefore required to do so, to further the strong public policy in favor of arbitration, as numerous other courts have done. *See, e.g., Grabowski*, 817 F. Supp. 2d at 1179 (enforcing DRP after severing carve-out for company claims for injunctive or equitable relief, and two other provisions); *Pope v. Sonatype, Inc.*, No. 5:15–cv–00956–RMW, 2015 WL 2174033, at *6-7 (N.D. Cal. May 8, 2015) (enforcing arbitration agreement after severing carve-out for claims seeking injunctive relief for trade secret misappropriation, and two other provisions);

*Martin v. Ricoh Americas Corp.*, No. C–08–4853 EMC, 2009 WL 1578716, at

*5-6 (N.D. Cal. June 4, 2009) (enforcing arbitration agreement after severing

provision allowing employer to seek injunctive relief in court); *Arreguin v. Global*

*Equity Lending, Inc.*, No. C 07-06026 MHP, 2008 WL 4104340, at *8-9 (N.D. Cal.

Sept. 2, 2008) (enforcing arbitration agreement after severing carve-out for

employer claims seeking injunctive or other equitable relief, and one other

provision); *Siglain v. Trader Pub. Co.*, No. C 08-2108 JL, 2008 WL 3286974, at

*10-11 (N.D. Cal. August 6, 2008) (enforcing arbitration agreement after severing

carve-out for "claims concerning restrictive covenants, confidentiality agreements

or trade secrets"); *Gillespie v. Western Pacific Housing Management, Inc.*,

No. D066354, 2014 WL 7195024, at *5-6 (Cal. Ct. Appeal, 4th Dist. Dec. 18,

2014) ("[I]f the [agreement]'s provision allowing both parties to seek injunctive or

declaratory relief in court is unconscionable because it is only likely that Western

Pacific would bring such a claim, the court was obligated to sever it and enforce

the remainder of the agreement.").

Accordingly, having erred by finding provisions of the IBA unconscionable

when they were not, the District Court then compounded by its error by failing to

sever the carve-out provision contained in the IBA.

The IBA is not substantively unconscionable.

## VIII. **CONCLUSION**

For all the foregoing reasons, this Court should reverse the District Court's order denying CHRW's motion to compel arbitration, and direct the District Court to enter a new order granting the motion, dismissing Plaintiff's class and representative claims, and staying the action pending arbitration of her individual claims.

Respectfully submitted.

DATED: August 17, 2015

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: */s/ Christopher W. Decker*
　　Jack S. Sholkoff
　　Christopher W. Decker
　　Kathleen J. Choi
Attorneys for Defendants - Appellants
C.H. ROBINSON COMPANY and
C.H. ROBINSON WORLDWIDE, INC.

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(c) and Ninth Circuit Rule 32-1, I certify that the attached brief is proportionately spaced and has a typeface of 14 points and contains 13,211 words, excluding the caption page, tables of contents and authorities, and all required certificates.


DATED:  August 17, 2015        OGLETREE, DEAKINS, NASH, SMOAK
                       & STEWART, P.C.


                       By:  */s/ Christopher W. Decker*
                           Jack S. Sholkoff
                           Christopher W. Decker
                           Kathleen J. Choi
                       Attorneys for Defendants - Appellants
                       C.H. ROBINSON COMPANY and
                       C.H. ROBINSON WORLDWIDE, INC.

## STATEMENT OF RELATED CASES

No other cases are deemed related to this case pursuant to Ninth Circuit

Rule 28-2.6.


DATED:  August 17, 2015          OGLETREE, DEAKINS, NASH, SMOAK
                                 & STEWART, P.C.


                                 By: */s/ Christopher W. Decker*
                                     Jack S. Sholkoff
                                     Christopher W. Decker
                                     Kathleen J. Choi
                                 Attorneys for Defendants - Appellants
                                 C.H. ROBINSON COMPANY and
                                 C.H. ROBINSON WORLDWIDE, INC.

56

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on August 17, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Christopher W.  Decker*
Christopher W. Decker
Attorney for Defendants-Appellee

22009144.4

57