U.S. Court of Appeals No. 15-55143
U.S.D.C. Case No. 2:12-cv-06654-CAS(MANx)

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

LORRIE POUBLON, an individual, on behalf of herself, and on behalf of all persons similarly situated,

*Plaintiff - Appellee,*

vs.

C.H. ROBINSON COMPANY and C.H. ROBINSON WORLDWIDE, INC.,

*Defendants - Appellants.*

---

## APPELLANTS' REPLY BRIEF

---

Appeal from an Order of the United States District Court
For the Central District of California
Case No. 2:12-cv-06654-CAS(MANx)
The Honorable Christina A. Snyder, Judge Presiding

---

JACK S. SHOLKOFF, State Bar No. 145097
jack.sholkoff@ogletreedeakins.com
CHRISTOPHER W. DECKER, State Bar No. 229426
christopher.decker@ogletreedeakins.com
KATHLEEN J. CHOI, State Bar No. 284428
kathleen.choi@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213.239.9800
Facsimile: 213.239.9045

Attorneys for Defendants - Appellants
C.H. ROBINSON COMPANY and C.H. ROBINSON WORLDWIDE, INC.

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................1

ARGUMENT ......................................................................................................3

I.  THE DISTRICT COURT ERRED BY FINDING THAT THE DRP
    EVINCES MORE THAN A MINIMAL DEGREE OF PROCEDURAL
    UNCONSCIONABILITY. ..............................................................................3

II.  THE DISTRICT COURT ERRED BY FINDING MULTIPLE
     ALLEGEDLY UNCONSCIONABLE PROVISIONS IN THE DRP. ...............8

   A.  The Bar On Representative Actions In Arbitration Is Not
       Unconscionable.....................................................................................8

   B.  The DRP's Venue Provision Is Not Unconscionable...................................10

   C.  The DRP Does Not Contain An Unconscionable Unilateral
       Modification Provision. ...................................................................13

   D.  The DRP's Attorneys' Fees Provisions Are Not Unconscionable. ...............14

   E.  The DRP's Confidentiality Provision Is Not Unconscionable. .....................16

   F.  The DRP's Discovery Provision Is Not Unconscionable.............................19

   G.  The Recital Renewing The Confidentiality And Noncompetition
       Agreement Has No Bearing On The Enforceability Of The DRP. ...............22

III. THE DISTRICT COURT ERRED BY FAILING TO SEVER ANY
     UNCONSCIONABLE PROVISIONS OF THE DRP AND ENFORCE
     THE REMAINDER OF THE AGREEMENT. ..................................................23

CONCLUSION ..................................................................................................29

CERTIFICATE OF COMPLIANCE ....................................................................30

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Acorn v. Household International, Inc.*,
    211 F. Supp. 2d 1160 (N.D. Cal. 2002)..............................................................18

*Alcoa v. Beazer*,
    124 F.3d 551 (3d Cir. 1997) ...............................................................................15

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)............................................................................................11

*Carr v. City of Anchorage*,
    243 F.2d 482 (9th Cir. 1957) ..............................................................................12

*Davis v. O'Melveny & Myers*,
    485 F.3d 1066 (9th Cir. 2007) ............................................................................16

*Doctor's Associates, Inc. v. Casarotto*,
    517 U.S. 681 (1996)............................................................................................23

*Ferguson v. Countrywide Credit Industries*,
    298 F.3d 778 (9th Cir. 2002) ..............................................................................28

*Grabowski v. C.H. Robinson Co.*,
    817 F. Supp. 2d 1159 (S.D. Cal. 2011)...............................................................18

*Jacobson v. Snap-On Tools Co.*,
    2015 WL 8293164 (N.D. Cal.) ..............................................................................9

*Kilgore v. KeyBank Nat. Ass'n*,
    718 F.3d 1052 (9th Cir. 2013) ............................................................................16

*Levin v. Caviar, Inc.*,
    ___ F. Supp. 3d ___, 2015 WL 7529649 (N.D. Cal.)............................................9

*Nagrampa v. MailCoups, Inc.*,
    469 F.3d 1257 (9th Cir. 2006) ......................................................................18, 23

*O'Connor v. Uber*,
    ___ F.R.D. ___, 2015 WL 8292006 (N.D. Cal.) ..................................................8

*Openshaw v. FedEx Ground Package System, Inc.*,
 731 F. Supp. 2d 987 (2010) ................................................................21

*Pokorny v. Quixtar, Inc.*,
 601 F.3d 987 (9th Cir. 2010) ..............................................................16

*Sakkab v. Luxottica*,
 803 F.3d 425 (9th Cir. 2015) .....................................................8, 9, 10

*Tagliabue v. J.C. Penney Corp., Inc.*,
 2015 WL 8780577 (E.D. Cal.)..............................................................9

*Ting v. AT&T*,
 319 F.3d 1126 (9th Cir. 2003) ............................................................16

*Walker v. Ryan's Family Steak Houses, Inc.*,
 400 F.3d 370 (2005)............................................................................21

**California Cases**

*A&M Produce Co. v. FMC Corp.*,
 135 Cal. App. 3d 473 (1982) ..............................................................24

*Abramson v. Juniper Networks, Inc.*,
 115 Cal. App. 4th 638 (2004) .......................................................23, 25

*Ajamian v. CantorCO2e, L.P.*,
 203 Cal. App. 4th 771 (2012) ...............................................................6

*Armendariz v. Foundation Health Psychcare Services, Inc.*,
 24 Cal. 4th 83 (2000) ....................................................................19, 27

*Birbrower, Montalbano, Condon & Frank, P.C. v. Superior Court*,
 17 Cal. 4th 119 (1998) ........................................................................25

*Blake v. Ecker*,
 93 Cal. App. 4th 728 (2001), *disapproved of on other grounds by*
 *Le Francois v. Goel*,
 35 Cal. 4th 1094 (2005) ................................................................11, 27

*Cal. School Employees Ass'n v. Del Norte County Unified Sch. Dist.*,
 2 Cal. App. 4th 1396 (1992) ...............................................................24

*Casas v. CarMax Auto Superstores LLC*,
224 Cal. App. 4th 1233 (2014) ........................................................................14

*Dotson v. Amgen, Inc.*,
181 Cal. App. 4th 975 (2010) ......................................................................6, 19

*Edwards v. Arthur Andersen LLP*,
44 Cal. 4th 937 (2008) ......................................................................................22

*Fitz v. NCR Corp.*,
118 Cal. App. 4th 702 (2004) ..........................................................................21

*Franco v. Arakelian Enterprises, Inc.*,
171 Cal. App. 4th 1277 (2009) ..........................................................................9

*Franco v. Arakelian Enterprises, Inc.*,
234 Cal. App. 4th 947 (2015) ...................................................................10, 22

*Iskanian v. CLS Transportation Los Angeles, LLC*,
59 Cal. 4th 348 (2014) ..................................................................8, 9, 10, 22

*Keene v. Harling*,
61 Cal. 2d 318 (1964) .......................................................................................24

*Kinney v. United HealthCare Services, Inc.*,
70 Cal. App. 4th 1322 (1999) ..........................................................................21

*Lane v. Francis Capital Management, LLC*,
224 Cal. App. 4th 676 (2014) ............................................................................7

*Lhotka v. Geographic Expeditions*,
181 Cal. App. 4th 816 (2010) ..........................................................................23

*Mailand v. Burckle*,
20 Cal. 3d 367 (1978) .......................................................................................24

*Marathon Entertainment, Inc. v. Blasi*,
42 Cal. 4th 974 (2008) ...............................................................................24, 25

*In re Marriage of Facter*,
212 Cal. App. 4th 967 (2013) ..........................................................................24

iv

*Martinez v. Master Protection Corp.*,
118 Cal. App. 4th 107 (2004) ................................................................23

*Mercuro v. Superior Court*,
96 Cal. App. 4th 167 (2002) ..................................................................20

*Murphy v. Check 'N Go of California, Inc.*,
156 Cal. App. 4th 138 (2007) ................................................................23

*Ontiveros v. DHL Express*,
164 Cal. App. 4th 494 (2008) ................................................................21

*Peng v. First Republic Bank*,
219 Cal. App. 4th 1462 (2013) ................................................................7

*Pinela v. Neiman Marcus Group, Inc.*,
238 Cal. App. 4th 227 (2015) ................................................................23

*Roman v. Superior Court*,
172 Cal. App. 4th 1462 (2009) ................................................................6

*Samaniego v. Empire Today LLC*,
205 Cal. App. 4th 1138 (2012) ..............................................................23

*Sanchez v. CarMax Auto Superstores California LLC*,
224 Cal. App. 4th 398 (2014) ..........................................................17, 20

*Sanchez v. Valencia Holding Co.*,
61 Cal. 4th 899 (2015) ..........................................................................12

*Sanchez v. Western Pizza Enterprises, Inc.*,
172 Cal. App. 4th 154 (2009) ................................................................23

*Securitas Security Services USA, Inc. v. Superior Court*,
234 Cal. App. 4th 1109 (2015) ............................................................8, 9

*Serpa v. California Surety Investigations, Inc.*,
215 Cal. App. 4th 695 (2013) ..................................................................6

*Sparks v. Vista Del Mar Child & Family Services*,
207 Cal. App. 4th 1511 (2012) ..............................................................14

*Stirlen v. Supercuts, Inc.*,
   51 Cal. App. 4th 1519 (1997) ............................................................28

*Trivedi v. Curexo Technology Corp.*,
   189 Cal. App. 4th 387 (2010) ...........................................................23

## **INTRODUCTION**

Appellee's attempt to defend the District Court's order denying Appellants C.H. Robinson Company and C.H. Robinson Worldwide, Inc.'s (collectively "CHRW") Motion to Compel Arbitration is unpersuasive. The Dispute Resolution Provision (the "DRP") contained in the Incentive Bonus Agreements and Bonus Incentive Agreements (the "IBA") evinces at most minimal procedural unconscionability and at most one substantively unconscionable provision. Given that the provision can easily be severed without impacting any other provision of the agreement or vitiating its main purpose, the strong public policy in favor of arbitration requires that the court do so and enforce the remainder of the DRP. The District Court erred in reaching a different result.

The DRP evinces at most minimal procedural unconscionability because it was not a condition of continued employment, only of receiving additional bonus compensation amounting to approximately 25% of Appellee's total remuneration. Moreover, the IBA governed only the bonus for the upcoming calendar year – not bonus compensation already earned or promised. All of the objective evidence in the record confirms this interpretation. Appellee's (and the District Court's) final argument that the provision of the DRP incorporating external arbitration rules by reference is procedurally unconscionable relies on an erroneous view of the relevant authorities.

1

As for substantive unconscionability, the District Court erred in finding multiple provisions of the DRP unconscionable, and Appellee compounds the error by adding still more which the District Court rightly rejected. The District Court's conclusions regarding the DRP's venue, confidentiality and attorney's fees provisions misconstrue them, misapply California law, or rely on legal arguments inconsistent with the directives of the United States and California Supreme Courts. Its conclusion that the DRP allows CHRW to modify the arbitration rules unilaterally finds no support in the agreement, and violates basic principles of contractual interpretation. Finally, Appellee's further attacks on the DRP's bar on representative actions, its discovery provisions, and a recital renewing certain other agreements between the parties are unpersuasive and the District Court rightly rejected them. These attacks rely on inapposite authorities, confuse the pertinent legal issues, or both.

The District Court further erred in refusing to sever any unconscionable provisions in order to enforce the remainder of the DRP. Under general principles of contract law, the court should sever unenforceable provisions so long as it can do so without vitiating the main purpose of the contract. California courts have repeatedly enforced contracts after severing multiple unenforceable provisions. The United States and California Supreme Courts have both recently held that courts must analyze arbitration agreements as they do any other contract, hence the

2

same principles must apply here. Since the main purpose of the DRP is simply to submit all claims either party has against the other to arbitration, all of the attacked provisions could easily be severed and it is error to fail to do so. Here, in fact, there is at most one substantively unconscionable provision – a carve-out exempting certain claims by CHRW from arbitration. All authorities recognize that a single unconscionable provision is insufficient to support a finding that unconscionability permeates the agreement; rather the court must sever the provision and enforce the remainder of the agreement.

## <u>ARGUMENT</u>

## I. THE DISTRICT COURT ERRED BY FINDING THAT THE DRP EVINCES MORE THAN A MINIMAL DEGREE OF PROCEDURAL UNCONSCIONABILITY.

Appellee acknowledges, as she must, that an agreement to arbitrate is unenforceable only if it evinces *both* procedural <u>and</u> substantive unconscionability and that, where the degree of procedural unconscionability is low, the agreement will be enforceable unless the degree of substantive unconscionability is high. CHRW's Opening Brief further established that, under California law, a requirement that an employee enter into a "take-it-or-leave-it" arbitration agreement as a condition of employment creates only a low degree of procedural unconscionability. (Open. Br. p. 14.) Appellee does not challenge either of these conclusions.

Instead, Appellee attempts to defend the District Court's finding that the DRP exhibits a "significant" degree of procedural unconscionability, arguing that (i) she believed that it was a condition of continued employment, (ii) she would have forfeited approximately 25% of her <u>earned</u> wages if she declined to sign it, and (iii) she did not receive copies of the applicable arbitration rules at the time she executed the agreement. None of these contentions have merit.

First, Appellee admits that she asked her manager "what would happen if I did not sign the [IBA]," and that he responded that it "would result in me not being paid my bonus." (EOR 152 ¶ 5.) She does not recall him saying that refusing to sign the IBA would lead to her termination. (Id.) Moreover, he confirmed at deposition that it would not. (EOR 353 lines 3-23). The e-mail exchange between them dated December 23, 2011 similarly states that "by not signing, you will not be paid any bonus or draw in your January paycheck," which assumes that she *would* remain employed even if she declined to sign the IBA. (EOR 156.) As for the IBA itself, it states only that it is "in consideration of Your continued employment," not that it is a *condition* of continued employment. (EOR 240 (preamble), 323 (preamble), 329 (preamble), 335 (preamble), 341 (preamble).) Absent any evidence that her belief was grounded in CHRW's actions or words, Appellee's belief that she could lose her job if she did not execute the IBA is

entitled to no weight in analyzing whether the DRP was procedurally unconscionable, and if so, to what degree.

Appellee's assertion that CHRW required her to execute the IBA to receive previously-earned bonus compensation is incorrect. Each IBA states that it governs incentive compensation for the *upcoming* calendar year. (EOR 240, 323, 329, 335, 341.)[1] Mr. Nelson's December 23, 2011 e-mail and deposition testimony both confirm that the IBA was a precondition to *future* incentive-based compensation. (EOR 156, 354-56 lines 46:15 – 48:17.)[2] Appellee's unsupported subjective belief to the contrary is insufficient to support a finding of procedural unconscionability.

In sum, the record below demonstrates that, if Appellee rejected the IBA (and hence the DRP), she would remain employed in the same position at the same base salary, but forego a bonus representing approximately 25% of her total

---

[1] Each IBA was executed in December. The "Effective Date" is defined in the penultimate paragraph of the IBA, and further clarified in section 1, both of which provide that the IBA is effective for the *upcoming* calendar year.

[2] Appellee testifies that her manager told her "that by not signing, I would not be paid my bonus or draw in my January paycheck," (EOR152), but does not clarify whether the January bonus/draw payment is for the prior calendar year, or the year beginning that January. The IBA, however, clarifies that "Bonus Advances" will be paid "[b]eginning the first payday after the Effective Date" and that the "Effective Date" is January 1st of the upcoming calendar year. (EOR 240, 323, 329, 335, 341.) Hence, her manager's reported statement would refer to the advance to be paid in January on her bonus for the calendar year beginning that same month.

compensation. Any resulting pressure on her was thus markedly less than the "limited" degree of procedural unconscionability where the employer requires an adhesive arbitration agreement as a condition of continued employment. *See, e.g. Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1470-71 (2009); *Serpa v. California Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 704 (2013); *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 796 (2012); *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 981-82 (2010). And even if she were correct regarding the consequences of declining to sign the IBA, Appellee would still establish only a low degree of procedural unconscionability. Indeed, Appellee does not dispute that (i) the IBA advised her to consult with an attorney, (ii) she could take the document home and review it at her leisure, (iii) she signed a new IBA each year and thus had multiple occasions to familiarize herself with it and consult an attorney about it, (Open. Br. pp. 15-16), all of which further lessen the degree of procedural unconscionability associated with the DRP.

Appellee's final argument that the DRP was procedurally unconscionable because the incorporated arbitration rules were not attached ignores the lengthy discussion in CHRW's Opening Brief analyzing California law on this point.[3] (Open. Br. pp. 16-22.) As detailed therein, the most factually analogous California

---

[3] Appellee's assertion that the DRP allows CHRW to modify the arbitration rules unilaterally is addressed in section II.D, below.

authorities are *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1472 (2013),

and *Lane v. Francis Capital Management, LLC*, 224 Cal. App. 4th 676, 690

(2014), both of which conclude that failure to attach the arbitration rules supports a

finding of procedural unconscionability only where those rules contain

substantively unconscionable provisions that amount to an unfair surprise to the

other party. *Peng*, 219 Cal. App. 4th at 1471-72; *Lane*, 224 Cal. App. 4th at 690-

92. At least half a dozen district courts concur. (See authorities cited at Open. Br.

p. 18 n. 4.) Moreover, as also detailed in CHRW's Opening Brief, the authorities

on which the District Court relied hold arbitration agreements to a higher standard

than other contracts, as California courts routinely enforce contractual provisions

incorporating external documents by reference outside the arbitration context.

(Open. Br. pp. 20-22.) However, the California Supreme Court has made clear that

such an approach is inconsistent with the FAA and the decisions of the United

States Supreme Court interpreting it. (Open. Br. at 21-22.)

   In short, the District Court improperly concluded that the DRP exhibited a

significant degree of procedural unconscionability. On the record before it, the

court below should have found that the DRP exhibited only a minimal degree of

procedural unconscionability, and hence would be enforceable unless the level of

substantive unconscionability were high, which it is not.

**II.    THE DISTRICT COURT ERRED BY FINDING MULTIPLE ALLEGEDLY UNCONSCIONABLE PROVISIONS IN THE DRP.**

CHRW acknowledges that, under current California law, an arbitration agreement may not exclude employer claims for declaratory or injunctive relief. However, because the DRP contains no other substantively unconscionable provisions, the District Court erred by failing to sever this discreet provision of the DRP and enforce its remaining provisions.

**A.    The Bar On Representative Actions In Arbitration Is Not Unconscionable.**

No authority supports Appellant's argument, which the District Court rightly rejected, that the DRP's bar on representative PAGA claims in arbitration supports a finding of substantive unconscionability.  Rather, the California Supreme Court and the Ninth Circuit have held that such provisions are void as a matter of public policy. *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348, 382-84 (2014); *Sakkab v. Luxottica*, 803 F.3d 425, 430-31 (9th Cir. 2015) (following *Iskanian*).  Unconscionability plays no role in either court's analysis.

The distinction is important because "[w]hether an arbitration agreement is unenforceable as a matter of public policy is a distinct question from whether an arbitration agreement is unenforceable because of unconscionability." *O'Connor v. Uber*, ___ F.R.D. ___, 2015 WL 8292006, at *8 (N.D. Cal.).  *Securitas Security Services USA, Inc. v. Superior Court*, 234 Cal. App. 4th 1109 (2015), decided after

8

*Iskanian*, illustrates the distinction, rejecting the employer's argument that a PAGA waiver was enforceable because there was no evidence of procedural unconscionability. *Id.* at 1121-22. The court reasoned that "whether an agreement has been validly formed, and whether its terms are adhesive or unconscionable—are different from the determination of whether [the employee] entered into a knowing and intelligent waiver of her right to bring a PAGA claim . . . or whether *Iskanian* compels a conclusion that such a waiver is unenforceable as against public policy." *Id.* at 1123.

In keeping with this distinction, courts invalidating bans on representative PAGA actions in arbitration routinely enforce the remainder of the arbitration agreement after voiding the PAGA waiver. *See, e.g. Iskanian*, 59 Cal. 4th at 391 ("[the employer] cannot compel the waiver of Iskanian's representative PAGA claims but . . . the agreement is otherwise enforceable according to its terms"); *Sakkab,* 803 F.3d at 440 (requiring arbitration of non-PAGA claims); *Tagliabue v. J.C. Penney Corp., Inc.*, 2015 WL 8780577, at \*9 (E.D. Cal.) (same); *Levin v. Caviar, Inc.*, ___ F. Supp. 3d ___, 2015 WL 7529649, at \*11 (N.D. Cal.) (same); *Jacobson v. Snap-On Tools Co.,* 2015 WL 8293164, at \*6 (N.D. Cal.) (same). Appellee's only authority suggesting that a PAGA waiver could be grounds not to enforce an arbitration agreement in its entirety is *Franco v. Arakelian Enterprises, Inc.*, 171 Cal. App. 4th 1277 (2009), which was decided before *Iskanian* and

9

*Sakkab*. After the California Supreme Court issued its decision in *Iskanian,* the *Franco* court re-examined the same arbitration agreement and held that "[plaintiff]'s claims for individual relief are subject to arbitration . . . his representative claims under the PAGA are not." *Franco v. Arakelian Enterprises, Inc.*, 234 Cal. App. 4th 947, 961 (2015). Under current law, the result should be the same here. This Court should direct the District Court to compel Plaintiff's non-PAGA claims to arbitration on an individual basis and hold a further hearing to determine whether the PAGA claim should be arbitrated, severed for separate judicial proceedings, or stayed. *See Iskanian*, 59 Cal. 4th at 391-92; *Sakkab*, 803 F.3d at 440.

### B. The DRP's Venue Provision Is Not Unconscionable.

Appellee's attack on the venue provision in the Employment Dispute Mediation/Arbitration Procedure ("EDMAP"), incorporated by reference into the DRP, simply repeats the District Court's erroneous analysis, without addressing any of the points raised by CHRW in its Opening Brief. First, Appellee repeats the District Court's misreading of the provision as "forcing" her to litigate her claims in Minnesota when, in fact, it provides for venue in Minnesota only if the parties are unable to agree on a different venue <u>and</u> the arbitrator does not find "good reason" to order a different venue. (EOR 318 § II(f).) Here, the parties are in

agreement that California is the proper venue[4] and, hence, the agreement <u>as written</u> requires arbitration in California, not Minnesota. As further explained in the Opening Brief, this is not an offer to change the arbitration agreement, but a reliance on its express terms. Appellee's citations to *Armendariz* and *Stirlen v. Supercuts, Inc.* are therefore inapposite, as neither analyzed a contractual term which was expressly subject to later modification by the parties. Rather, the relevant authority is *Blake v. Ecker*, 93 Cal. App. 4th 728 (2001), discussed in CHRW's Opening Brief, which Appellee fails to address.

Second, Appellee repeats the District Court's error in relying on authorities which apply a different standard to forum selection clauses in arbitration agreements than applies outside the arbitration context. As noted in CHRW's Opening Brief, the California Supreme Court and Courts of Appeal have repeatedly enforced forum selection clauses – even adhesive ones – requiring parties to litigate claims under California law in the courts of other states, without regard to the convenience of the plaintiff or weaker party. (Open. Br. pp. 28-30.) Moreover, as also detailed in the Opening Brief, recent decisions from the United States Supreme Court and California Supreme Court require courts to apply the same standards to arbitration agreements as to any other contract. *AT&T Mobility*

---

[4] CHRW stipulated in open court that it would consent to arbitration in California. (EOR 37 lines 8-15.) Appellee has consistently demanded arbitration in California throughout these proceedings. *See, e.g.* EOR 135-37.

*LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 912-13 (2015). Yet, Appellee, like the District Court, relies exclusively on cases analyzing forum selection clauses in arbitration agreements, all of which predate *AT&T Mobility* and *Sanchez v. Valencia Holding Co.*, and none of which acknowledge the multiple California authorities enforcing forum selection clauses outside the arbitration context. Appellee's (and the District Court's) authorities are therefore no longer persuasive, a point made in the Opening Brief to which Appellee offers no rebuttal.

Third, Appellee wholly ignores CHRW's argument and authorities in the Opening Brief that the provision granting the arbitrator discretion to transfer venue for "good reason" adequately protects her interests and eliminates any unfairness in the DRP's venue provision. (Open. Br. pp. 26-28.) Hence, even if CHRW's stipulation to arbitrate in California were ineffective, and even if the authorities prohibiting forum selection clauses in arbitration agreements were still good law, the DRP's venue provision would still be free of substantive unconscionability.[5]

---

[5] Appellee's observation that the IBA includes a forum selection clause for claims <u>not</u> subject to arbitration is irrelevant because the clause has no impact on the conduct of the arbitration and thus cannot impact its fairness. Moreover, Appellee offers no authority that the clause would be unenforceable, and CHRW's authorities establish the contrary. Finally, this argument was not advanced before the district court, and thus cannot be pursued on appeal. *Carr v. City of Anchorage*, 243 F.2d 482, 484 (9th Cir. 1957).

**C.     The DRP Does Not Contain An Unconscionable Unilateral Modification Provision.**

Appellee's argument that the DRP allows CHRW to unilaterally modify the applicable arbitration rules similarly repeats the District Court's erroneous analysis, again without addressing any of the points raised by CHRW in its Opening Brief.  First, Appellee simply repeats the District Court's erroneous conclusion that the provision incorporating the arbitration rules posted in the CHRW's intranet authorizes unilateral modifications by CHRW because the company "presumably ha[s] the ability to alter" them.  However, as explained in the Opening Brief, this interpretation (i) is contrary to the plain language of the DRP, which incorporates the rules in existence at the time of contracting, (ii) implies that any incorporation by reference must specify that it incorporates only the document then in existence, which is not the law, (iii) ignores the well-established principle that a contract must be construed so as to make it lawful, and (iv) fails to give effect to the DRP provision authorizing the court to modify it "to the extent necessary . . . in order to make it enforceable," (EOR 240 (4th to last paragraph); EOR 323, 329, 335, 341).  Appellee has no response to any of these arguments.

Second, Appellee repeats the District Court's error in relying on *Ingle* and district court decisions following it to conclude that a unilateral modification provision is *per se* substantively unconscionable.  As detailed in CHRW's Opening

13

Brief, not less than <u>four</u> California decisions conclude to the contrary, reasoning that the implied covenant of good faith and fair dealing limits the employer's authority to modify the agreement and hence saves it from being unconscionable. (Open. Br. pp 45-46.)  Appellee addresses only one of these authorities, *Casas v. CarMax Auto Superstores LLC*, 224 Cal. App. 4th 1233 (2014), attempting to distinguish it on the same grounds identified by the District Court.  However, as also detailed in the Opening Brief, *Casas* itself rejects those grounds, explaining that they played no role in its decision.  (Open. Br. p. 46.)  The only California authority Appellee cites in support of her position is *Sparks v. Vista Del Mar Child & Family Services*, 207 Cal. App. 4th 1511 (2012) which, as *Casas* noted, is unpersuasive as it failed to acknowledge the relevant California precedents, relying instead on out-of-state authority.  *Casas*, 224 Cal. App. 4th at 1236.  Hence, there is no "persuasive data" that the California Supreme Court would decide this issue differently than the cases cited by CHRW, and the District Court erred in not following the decisions of four separate California Courts of Appeal.

### D.  The DRP's Attorneys' Fees Provisions Are Not Unconscionable.

Once again, Appellee simply repeats the erroneous conclusions of the District Court without addressing any of the points raised by CHRW in its Opening Brief.  In that brief, CHRW demonstrated that (i) each clause of the EDMAP authorizing the arbitrator to award fees to CHRW corresponds to a provision of the

California Code of Civil Procedure authorizing a court to award attorneys' fees as a sanction, and (ii) no language of the EDMAP authorizes the arbitrator to award fees to CHRW merely because it prevailed on the merits. (Open. Br. pp. 36-38.) Appellee does not respond to any of this analysis, but merely dismisses it, claiming that CHRW took a contrary position in the *Grabowski v. C.H. Robinson Co.* litigation. Yet Appellee also fails to address the evidence presented in CHRW's Motion for Judicial Notice that CHRW never affirmatively represented a contrary position in the *Grabowski* matter (Mot. To Take Jud'l Notice, DktEntry: 8, Exs. A-C), as well as the authorities demonstrating that, even if it had, CHRW would not be bound by such a representation in subsequent litigation (Open, Br. 39-41).[6] Appellee therefore fails to demonstrate that the District Court's conclusion regarding the DRP's attorneys' fees provision was correct.

Appellee also fails to identify any provision of the DRP supporting her further argument that it authorizes the arbitrator *not* to award attorneys' fees to a prevailing plaintiff. In fact, the incorporated EDMAP provides that "[t]he principles of applicable substantive common, decisional and statutory law shall control the disposition of each Dispute," (EOR 318 § II(j)) and "[t]he Arbitrator

---

[6] The *Grabowski* court's ruling on this issue does not have collateral estoppel effect. Because CHRW did not contest Plaintiff's argument, the issue was not "actually litigated and determined." Moreover, a ruling on a motion to compel arbitration is not a final judgment which can have collateral estoppel effect. *Alcoa v. Beazer*, 124 F.3d 551, 562 (3d Cir. 1997).

15

shall have the same power and authority as would a judge in a non-jury court trial to grant any relief a court could grant, as may be in conformance with applicable principles of common, decisional and statutory law in the relevant jurisdiction," (EOR 320 § II(o)). Hence, to the extent applicable law would require a court to award Plaintiff attorney's fees, the EDMAP authorizes and requires the arbitrator to do so as well.

### E. The DRP's Confidentiality Provision Is Not Unconscionable.

Appellee bases her attack on the confidentiality provision in the EDMAP on the same Ninth Circuit authorities cited by the District Court, yet fails to address CHRW's analysis distinguishing them. (Open. Br. pp. 31-33.) Specifically, the "repeat player" concern described in *Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003), is inapplicable in actions involving relatively small classes (such as the putative class here), as this Court subsequently acknowledged in *Kilgore v. KeyBank Nat. Ass'n*, 718 F.3d 1052, 1059 n. 9 (9th Cir. 2013). Additionally, *Ting* involved a form contract with 7 million customers, creating the possibility of repetitive lawsuits raising identical issues, but Appellee has not shown that duties of putative class members were sufficiently identical to create a similar possibility here. As for the concerns expressed in *Davis v. O'Melveny & Myers*, 485 F.3d 1066 (9th Cir. 2007), and *Pokorny v. Quixtar, Inc.*, 601 F.3d 987 (9th Cir. 2010), that employees would be unable to share evidence, both arose from confidentiality

provisions that prevented employees from discussing with others the substance of their claims and/or the evidence uncovered in discovery. Here, however, only the arbitration itself is confidential (EOR 319 § II(l)), which Appellee concedes is the usual practice.[7]

Appellee then reiterates the District Court's erroneous argument for declining to follow the California Court of Appeal's decision in *Sanchez v. CarMax Auto Superstores California LLC*, 224 Cal. App. 4th 398 (2014) – namely, that the decision offers little analysis and is therefore less persuasive than *Pokorny, Davis, and Ting*. However, Appellee addresses none of CHRW's critiques of this rationale in its Opening Brief. As demonstrated therein: (i) *Sanchez* is merely the latest of three California decisions examining this issue, all of which have held that requiring confidentiality in arbitration proceedings is not unconscionable (Open. Br. pp. 33-34); (ii) the confidentiality provisions in those California cases were substantially identical to the DRP provision, and more limited than the provisions invalidated in *Pokorny, Davis, and Ting* (Open. Br. pp. 33-34); (iii) multiple district courts and California Courts of Appeal have declined to extend *Pokorny, Davis, and Ting* to more limited confidentiality provisions (Open. Br. p. 34 n. 6),

---

[7] The DRP provision prohibiting disclosure of the record of the arbitration merely ensures that persons excluded from the arbitration do not obtain access to it through other means; it does not broaden the scope of the information kept confidential. Appellee's assertion that this provision "go[es] much further" than the common practice is therefore without merit.

and (iv) the totality of the relevant data does not provide sufficient basis for this Court to conclude that the California Supreme Court would adopt the reasoning of *Pokorny, Davis, and Ting* rather than the California cases approving confidentiality in arbitration (Open. Br. pp. 34-36).

Instead, Appellee cites two district court opinions, *Acorn v. Household International, Inc.*, 211 F. Supp. 2d 1160 (N.D. Cal. 2002) and *Grabowski v. C.H. Robinson Co.*, 817 F. Supp. 2d 1159 (S.D. Cal. 2011), neither of which binds this court. Moreover, neither acknowledges or discusses the pertinent California authorities approving confidentiality in arbitration. *Acorn*, in fact, relies on a rationale expressly *rejected* by the California courts and this Court – that "[t]he secrecy provisions . . . reinforc[e] the advantages Defendants already possess as repeat participants in the arbitration . . . market." 211 F. Supp. 2d at 1172. However, as this Court has noted, "merely raising the 'repeat player effect' claim, without presenting more particularized evidence demonstrating impartiality, is insufficient under California law to support an unconscionability finding." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1285 (9th Cir. 2006), *citing McManus v. CIBC World Mkts. Corp.*, 109 Cal. App. 4th 76, 94-95 (2003). As for *Grabowski*, it relies exclusively on *Davis*, which, as noted in CHRW's Opening Brief, analyzed a confidentiality provision far more restrictive that the one at issue here. *Acorn* and *Grabowski* are therefore unpersuasive.

### F.    The DRP's Discovery Provision Is Not Unconscionable.

Appellee next renews its argument below that the EDMAP places unconscionable limits on discovery, which the District Court properly rejected. The California Supreme Court has expressly declared that an arbitration agreement need only provide for discovery "sufficient to adequately arbitrate [the claimant's] statutory claim," which might be "something less than the full panoply of discovery provided in the Code of Civil Procedure."  *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 105, 106 (2000).  Indeed, "discovery limitations are an integral and permissible part of the arbitration process."  *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 983 (2010).

The only limitation on discovery is that it "shall be limited to that which is relevant and material to the Dispute and for which each Party has a substantial, demonstrable need."  (EOR 318 § II(g).)  The same provision provides that, upon request, Appellee shall be entitled to (i) "information and copies of documents that meet the criteria for discovery," (ii) "a true copy of his or her personnel records kept in the ordinary course of business . . . other than records relating to pre-employment procedures and any reference checks, subject to any condition or limitation imposed by the Arbitrator upon a showing of good cause, and (iii) "at least one deposition of an [sic] Company representative designated by the Employee." (Id.) In addition, "[t]he Arbitrator may grant, upon good cause shown,

either Party's request for discovery in addition to or limiting that for which this paragraph expressly provides." (Id.)

The DRP's discovery provisions are thus more liberal than provisions already approved by the California courts. *Mercuro v. Superior Court* (on which Appellee relies) approved a provision limiting discovery to three depositions and no more than 30 requests of any kind, with depositions of corporate representatives limited to at most four topics and additional discovery allowed only upon a showing of good cause. 96 Cal. App. 4th 167, 183, 184 (2002). Similarly, *Sanchez v. CarMax Auto Superstores California LLC*, enforced a provision requiring disclosure of relevant documents and the employee's personnel file, but limiting further discovery to 20 interrogatories and three depositions, with additional discovery allowed only upon a showing of "substantial need." 224 Cal. App. 4th 398, 404-06 (2014). Both courts agreed that a plaintiff attacking a discovery provision must come forward with evidence that they would prevent him from vindicating his rights; merely attacking them in the abstract is insufficient. *Mercuro*, 96 Cal. App. 4th at 183; *Sanchez*, 224 Cal. App. 4th at 405-06.

In contrast, Appellee cites to cases where the employee did make such a showing, discovery was far more restricted, or both. In *Fitz v. NCR Corp.*, the plaintiff had estimated a need to depose eight to ten witnesses, but the agreement limited discovery to the depositions of two individuals and any expert witnesses

identified by the other party, no written discovery was allowed, and additional discovery was permitted only if the requesting party could demonstrate that a fair hearing would be *impossible* without it. 118 Cal. App. 4th 702, 716-17 (2004). Similarly, in *Ontiveros v. DHL Express*, the plaintiff had estimated a need for at least 15 to 20 depositions, but the agreement provided for the deposition of one individual and any expert witness expected to testify, written discovery was limited to requests for documents, and additional discovery was available only upon a showing of "substantial need." 164 Cal. App. 4th 494, 511, 513 (2008). In *Kinney v. United HealthCare Services, Inc.*, discovery was limited to two depositions, 25 requests for production, and interrogatories only for the purpose of identifying witnesses, with no provision authorizing the arbitrator to permit additional discovery. 70 Cal. App. 4th 1322, 1326, 1332 (1999).[8]

Here, Appellee simply asserts without supporting evidence that the DRP's discovery provisions are insufficient to vindicate her claims. Her only supporting argument is that her PAGA claim necessitates interviewing and deposing many witnesses. If this is so, she should have no difficulty establishing good cause for

---

[8] Appellee's citations to *Walker v. Ryan's Family Steak Houses, Inc.* and *Openshaw v. FedEx Ground Package System, Inc.*, are even less helpful, as neither applies California law and both involve restrictions not present here. *See Walker*, 400 F.3d 370, 377, 387 (2005) (applying Tennessee law; more than one deposition allowed "in extraordinary fact situations only"); *Openshaw*, 731 F. Supp. 2d 987, 992 n.3, 995 (2010) (applying Pennsylvania law; discovery allowed only with respect to damages).

such discovery and obtaining it from the arbitrator.  Additionally, Appellee's assumption that her representative PAGA claim will be arbitrated is incorrect. Where an arbitration agreement includes an unenforceable PAGA waiver, there has been no meeting of the minds to arbitrate a representative PAGA claim and the claim must be severed and proceed in court.  *Iskanian*, 59 Cal. 4th at 391-92; *Franco*, 234 Cal. App. 4th at 965-66.

### G. The Recital Renewing The Confidentiality And Noncompetition Agreement Has No Bearing On The Enforceability Of The DRP.

Finally, Appellee renews her argument below, which the District Court correctly rejected, that the recital in the DRP renewing certain other agreements with CHRW is substantively unconscionable.  But Appellee offers no explanation how a separate agreement regarding distinct subject matter can render an agreement to arbitrate substantively unconscionable merely because it is referenced in the same document which contains the arbitration clause.  *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937 (2008), on which Plaintiff relies, does not even address this issue, as it establishes, at most, that denying an applicant employment because he or she refused to enter into an unenforceable noncompetition agreement (or provide consideration to be released from it) amounts to actionable intentional interference with prospective economic advantage.  *Edwards* is therefore inapposite.  Since the Confidentiality and Noncompetition Agreement has no

bearing on the scope or conduct of any arbitration, it also has no bearing on whether the agreement to arbitrate is enforceable.

## III. THE DISTRICT COURT ERRED BY FAILING TO SEVER ANY UNCONSCIONABLE PROVISIONS OF THE DRP AND ENFORCE THE REMAINDER OF THE AGREEMENT.

Appellee does not deny, nor could she, that, under California law, it is an abuse of discretion to refuse to enforce a contract which contains only a single unconscionable provision that can easily be severed. None of Appellee's authorities are to the contrary, as each involved an arbitration agreement containing multiple unconscionable provisions.[9]

Moreover, Appellee's (and the District Court's) argument that an arbitration agreement is "permeated" with unconscionability if it contains two or more unconscionable provisions conflicts with the United States Supreme Court's directive that the FAA "preclude[s] States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed 'upon the same footing as other contracts.'" *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *see also* Open. Br. pp. 20-21. Outside the arbitration context,

---

[9] *See Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 666-67 (2004)*: Sanchez v. Western Pizza Enterprises, Inc.*, 172 Cal. App. 4th 154, 181 (2009); *Murphy v. Check 'N Go of California, Inc.*, 156 Cal. App. 4th 138, 149 (2007); *Lhotka v. Geographic Expeditions*, 181 Cal. App. 4th 816, 826 (2010); *Samaniego v. Empire Today LLC*, 205 Cal. App. 4th 1138, 1149 (2012); *Martinez v. Master Protection Corp.*, 118 Cal. App. 4th 107, 119 (2004)*; Trivedi v. Curexo Technology Corp.*, 189 Cal. App. 4th 387, 398 (2010)*; Nagrampa*, 469 F.3d at 1285; *Pinela v. Neiman Marcus Group, Inc.*, 238 Cal. App. 4th 227, 256 (2015).

23

California courts routinely sever multiple unlawful provisions and enforce the remainder of a contract, especially where the contract contains an express severability clause. *See, e.g. Mailand v. Burckle*, 20 Cal. 3d 367, 384 (1978) (severing two unlawful provisions in franchise agreement); *A&M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 493 (1982) (severing two unlawful provisions); *In re Marriage of Facter*, 212 Cal. App. 4th 967, 986-87 (2013) (severing multiple provisions governing spousal support, child support and attorney's fees from prenuptial agreement); *Cal. School Employees Ass'n v. Del Norte County Unified Sch. Dist.*, 2 Cal. App. 4th 1396, 1404-06 (1992) (severing multiple provisions providing for outside supervision of school district employees). In contrast, <u>all</u> of Appellee's cases applying the "two strikes" rule concern arbitration agreements.

Hence, even if the DRP contained more than one unenforceable provision, severance would still be appropriate. Outside the arbitration context, a contract is "permeated" with unconscionability only where "the court is unable to distinguish between the lawful part of the agreement and the unlawful part." *Keene v. Harling*, 61 Cal. 2d 318, 321 (1964). "If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." *Marathon Entertainment, Inc. v. Blasi*, 42 Cal. 4th 974, 996 (2008) (citation and internal quotation marks omitted). Hence, the relevant inquiry

24

is not the number of unenforceable provisions, but the feasibility of severing them without vitiating the "main purpose" of the contract.

Appellee's heavy reliance on *Abramson v. Juniper Networks, Inc.* is therefore misplaced, as that Court of Appeals case exemplifies the unequal treatment of arbitration agreements which the FAA prohibits. In addition to repeating the arbitration-only "two strike" rule, *Abramson* reasons that because "the parties' employment relationship has ended . . . there obviously is no contractual relationship to preserve," and hence no benefit to saving the arbitration agreement. 115 Cal. App. 4th 638, 667 (2004). However, California courts apply no such rule outside the arbitration context, employing severance to enforce the lawful part of a contract even after all dealings between the parties have concluded. *See, e.g. Marathon Entertainment*, 42 Cal. 4th at 981, 997 (applying severance to enforce lawful parts of talent management contract after termination of management relationship); *Birbrower, Montalbano, Condon & Frank, P.C. v. Superior Court*, 17 Cal. 4th 119, 126, 139 (1998) (applying severance to enforce lawful parts of fee agreement after termination of attorney-client relationship). *Abramson* also reasons that saving the arbitration agreement would promote an "underserved detriment to the employee" by relegating the employee to the arbitral forum, exhibiting the very hostility to arbitration which the FAA seeks to correct. 115 Cal. App. 4th at 667.

All of the provisions Appellee attacks could easily be severed, as each is a discrete term of the DRP or EDMAP collateral to its main purpose. By its plain language, the essential object of the DRP was to submit to mediation/arbitration "all Claims the Company might bring against You and all claims You might bring against the Company," subject to certain limited exceptions. (EOR 240 ¶ 7, 323 ¶ 7, 329 ¶ 7, 335 ¶ 7, 341 ¶ 7.) Striking the exclusion for Company claims seeking injunctive or declaratory relief,[10] confidentiality requirements, or limitations on discovery (or any of the other provisions discussed above) would not alter that essential object. Since these provisions are collateral to the DRP's essential object and easily severed, it would be an abuse of discretion to refuse to do so and enforce the remainder of the DRP, especially given that the DRP includes an express severance clause.[11] (EOR 240 ¶ 7, 323 ¶ 7, 329 ¶ 7, 335 ¶ 7, 341 ¶ 7.)

---

[10] The provision allowing the Company to seek injunctive or declaratory relief in court can easily be severed by simply striking the third exclusion from the DRP's definition of "Claims," as illustrated in Appellee's Opening Brief. (Open. Br. at p. 50.) The DRP would then encompass "all claims directly or indirectly related to Your . . . employment," without excluding claims by the Company for injunctive or equitable relief.

[11] Appellee's evidence that CHRW pursued a judicial action against another employee in the State of Washington is irrelevant, as she offers no authority that Washington follows California law in requiring that arbitration agreements be bilateral. Since the carve-out for company claims seeking equitable relief is permissible in Washington, there is no injustice in CHRW availing itself of that carve-out there, but asking the court to sever it in California and enforce the DRP without the carve-out.

Such severance does not conflict with *Armendariz*'s observation that a party may not "resuscitate a legally defective contract merely by offering to change it," on which Appellee relies. *Armendariz* is inapposite because the arbitration agreement at issue there lacked any language bringing employer claims within the scope of the agreement. *Id.* at 120, 124-25. Hence, the only way to make the agreement bilateral was to <u>add</u> terms, which would amount to "an offer to modify the contract [which] was never accepted" because nothing gave the court authority to reform the agreement. *Id.* at 125-26. Here, by contrast, the DRP expressly covers "all Claims the Company might bring against you," subject to certain limited exceptions (which are easily severed), and directs the court to sever and/or modify its provisions "to the extent necessary . . . in order to make [the DRP] enforceable." As the court explained in *Blake v. Ecker*:

> In this case, the existence of the severance clause would appear to ease the concerns expressed by the *Armendariz* court. Here, the parties *agreed in advance* that the court could effect any necessary modifications in order to remove any "unreasonable and unenforceable" provisions. Thus, the employer's willingness to accept a severance in order to save the arbitration clause would not be an "*offer* to change" the clause, but rather a reliance upon an existing and express clause of the contract.

93 Cal. App. 4th at 746, *disapproved of on other grounds by Le Francois v. Goel*, 35 Cal. 4th 1094 (2005), (emphasis in original).[12]  *Stirlen* and *Ferguson*, on which

---

[12] Such severance and modification clauses are the only practical means for a nationwide employer such as CHRW to draft a uniform arbitration agreement

Appellee also relies, are similarly inapposite because, in both cases, the arbitration agreement at issue *prohibited* modifications, unless made in writing and accepted by both parties, which had not occurred. *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1535-36 (1997); *Ferguson v. Countrywide Credit Industries*, 298 F.3d 778, 786 (9th Cir. 2002).

Finally, Appellee offers no authority or reasoning to support her argument that the strong legislative and judicial preference in favor of severance is somehow inapplicable where the employer initially took the position that the term was enforceable. Here, the evidence cited by Appellee establishes only that CHRW informed her and her new employer that, if it determined that they were engaging in unlawful solicitation of CHRW's customers and/or employees, CHRW would seek injunctive and/or declaratory relief in Minnesota state court to protect its rights. (EOR 194-95.) Appellee identifies no evidence that CHRW ever instituted such an action, that she or her employer changed their behavior after receiving CHRW's cease and desist letter, or that she suffered any prejudice or detriment because CHRW took the position it did. If the carve-out for company claims for

---

enforceable in all jurisdictions. Given that state laws vary and are constantly changing, an employer's only realistic alternative is to draft an agreement that will be enforceable under the present law of most jurisdictions, and include severance and modification provisions to save the agreement in any jurisdiction where its provisions conflict with local law.

injunctive or declaratory relief is otherwise severable, the evidence offered by Appellee does not warrant a different result.

The District Court's refusal to sever any unenforceable provisions of the DRP was based on erroneous conclusions as to the extent of any such illegality and a legal standard which conflicts with the FAA. Its Order denying Appellants Motion to Compel Arbitration must therefore be reversed.

## **CONCLUSION**

For all the foregoing reasons, this Court should reverse the District Court's order denying CHRW's motion to compel arbitration, and direct the District Court to enter a new order compelling arbitration of Plaintiff's individual claims, dismissing Plaintiff's class claims, and staying Plaintiff's representative PAGA claim pending arbitration of her individual claims.

DATED: January 13, 2016             Respectfully submitted.

                                    OGLETREE, DEAKINS, NASH, SMOAK
                                    & STEWART, P.C.

                                    By: */s/ Christopher W. Decker*
                                         Jack S. Sholkoff
                                         Christopher W. Decker
                                         Kathleen J. Choi

                                    Attorneys for Defendants - Appellants
                                    C.H. ROBINSON COMPANY and
                                    C.H. ROBINSON WORLDWIDE, INC.

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7)(c) and Ninth Circuit Rule 32-1, I certify

that the attached brief is proportionately spaced and has a typeface of 14 points and

contains 6,980 words, excluding the caption page, tables of contents and

authorities, and all required certificates.

DATED:  January 13, 2016       OGLETREE, DEAKINS, NASH, SMOAK
                             & STEWART, P.C.


                     By:  */s/ Christopher W. Decker*
                         Jack S. Sholkoff
                         Christopher W. Decker
                         Kathleen J. Choi

                     Attorneys for Defendants - Appellants
                     C.H. ROBINSON COMPANY and
                     C.H. ROBINSON WORLDWIDE, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on January 13, 2016.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Christopher W.  Decker*
Christopher W. Decker
Attorney for Defendants-Appellee

23485240.2